Matthew C. Helland, CA SBN 250451
helland@nka.com
Daniel S. Brome, CA SBN 278915
dbrome@nka.com
NICHOLS KASTER, LLP
235 Montgomery Street, Suite 810
San Francisco, CA 94104
Telephone: (415) 277-7235
Facsimile: (415) 277-7238

Kevin Allen, CA State Bar No. 237994
kallen@vzfirm.com
Velton Zegelman, PC
1261 Lincoln Ave, Suite 208
San Jose, CA 95125
Telephone: (925) 695-4913
Facsimile: (925) 334-7477

Attorneys for Plaintiff and Others
Similarly Situated

### IN THE UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Joseph Bisaccia, Joshua Michi, and Rosie O'Brien, on behalf of themselves and others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>Revel Systems, Inc.,<br><br>Defendant. | **Case No. 17-cv-02533-HSG**<br><br>**PLAINTIFFS' MOTION FOR PRELIMINARY SETTLEMENT APPROVAL AND MEMORANDUM IN SUPPORT**<br><br>Date:    October 25, 2018<br>Time:    2:00 p.m.<br>Room:   2, 4th Floor<br><br>Action Filed: May 3, 2017 |

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................ ii

TABLE OF AUTHORITIES ......................................................................................... iv

NOTICE OF MOTION AND MOTION ........................................................................ 1

MEMORANDUM OF POINTS AND AUTHORITIES ................................................ 1

I.    Introduction ......................................................................................................... 1

II.   Relevant Background and Procedural History .................................................... 1

III.  Plaintiffs' claims ................................................................................................. 2

IV.   Settlement terms and relief obtained .................................................................. 3

V.    Argument ............................................................................................................. 7

  A.    The FLSA settlement is a reasonable compromise of a bona fide dispute ...................... 7

    1.    Risk of Decertification. .................................................................................. 7

    2.    Entitlement to Overtime. ................................................................................ 7

    3.    Amount of Overtime ....................................................................................... 8

    4.    Applicable Statute of Limitations .................................................................. 9

    5.    Calculation of Overtime ................................................................................. 9

    6.    Liquidated Damages ...................................................................................... 10

  B.    The Settlement is a Reasonable Compromise of Disputed Issues and Not a Result of Employer Over-Reach ......................................................................... 10

  C.    The class action settlement warrants approval ................................................. 11

    1.    Proposed Classes Satisfy the Requirements of Rule 23(a) ........................... 12

    2.    The Proposed Classes Satisfy the Requirements of Rule 23(b)(3) ............... 16

  D.    The proposed Settlement is fundamentally fair, adequate, and reasonable .................... 17

    1.    The strengths of Plaintiffs' case .................................................................... 17

    2.    The risk, expense, complexity, and duration of further litigation ................ 18

    3.    The risk of maintaining class action status through trial .............................. 19

4.    The amount offered in settlement ................................................................ 19

5.    The extent of discovery completed and the stage of proceedings ............................ 20

6.    The experienced views of counsel ................................................................ 20

7.    The views of class members ........................................................................ 20

E.    The Court should approve the notice forms ................................................... 21

F.    The Court should approve the requested attorneys' fees and costs, administration costs, and enhancement awards .................................................................................... 21

1.    The percentage-of-the-benefit method is warranted in this case. ............................. 22

2.    The percentage requested by class counsel is fair and reasonable. .......................... 22

3.    The Court should approve costs of up to $20,000 ............................................. 24

4.    The Court should approve costs of administration up to $10,000 ........................... 25

5.    The Court should approve Named Plaintiff service awards ................................... 25

CONCLUSION ......................................................................................... 25

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## TABLE OF AUTHORITIES

**Cases**

*Adoma v. University of Phoenix, Inc.*, 913 F. Supp. 2d 964 (E.D. Cal. 2012) .......................... 23

*Anchem Products v. Windsor*, 521 U.S. 591 (1997).................................................................... 15

*Armstrong v. Davis*, 275 F.3d 849 (9th Cir. 2001)............................................................... 13, 14

*Barbosa v. Cargill Meat Sol. Corp.*, 297 F.R.D. 431 (E.D. Cal. 2013) .................. 11, 15, 16, 21

*Bautista v. Harvest Mgt. Sub LLC*, 2014 WL 12579822 (C.D. Cal. Jul. 14, 2014) .................. 24

*Bellinghausen v. Tractor Supply Company*, 306 F.R.D. 245 (N.D. Cal. 2015) ......................... 15

*Boeing v. Van Gemert*, 444 U.S. 472 (1980)............................................................................... 22

*Boyce v. Independent Brewers*, 2016 WL 7188028 (N.D. Cal. Dec. 12, 2016).................... 9, 10

*Bratt v. County of Los Angeles*, 912 F.2d 1066 (9th Cir. 1990)................................................. 10

*Breeden v. Benchmark Lending Group, Inc.*, 229 F.R.D 623 (N.D. Cal. 2005) ........................ 12

*Burden v. SelectQuote Ins. Services*, 2013 WL 3988771 (N.D. Cal. Aug. 2, 2013)................. 23

*Class Plaintiffs v. City of Seattle*, 955 F.2d 1268 (9th Cir. 1992) ............................................. 11

*Collins v. Cargill Meat Solutions Corp.*, 274 F.R.D. 294 (E.D. Cal. 2011)............................. 12

*Deaver v. Compass Bank*, 2015 WL 8526982 (N.D. Cal. Dec. 11, 2015).................... 11, 23, 25

*Duran v. U.S. Bank, NA*, 59 Cal. 4th 1 (2014) ......................................................................... 19

*Gen. Tel. Co. of the Nw., Inc. v. EEOC*, 446 U.S. 318 (1980) ................................................. 12

*Glass v. UBS Financial Services, Inc.,* 2007 WL 221862 (N.D. Cal. 2007)............................. 22

*Graham v. Daimler Chrysler Corp.*, 34 Cal. 4th 553 (2004) .................................................... 24

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998)....................................... 13, 14, 15, 17

*Hanon v. Dataproducts Corp.*, 976 F.2d 497 (9th Cir. 1992) ................................................... 12

*Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909 (9th Cir. 1964)............................. 13

*Hendershot v. Ready to Roll Transportation, Inc.*, 228 Cal.App.4th 1214 (2014) .................. 13

*Hensley v. Eckerhart*, 461 U.S. 424 (1983).............................................................................. 23

*In re Mercury Interactive Corp. Securities Litigation*, 618 F.3d 988 (9th Cir. 2010) .............. 21

*In re Wells Fargo Home Mortg. Overtime Pay Litig.*, 527 F.Supp.2d 1053 (N.D. Cal. 2007). 14, 16

*Johnson v. California*, 543 U.S. 499 (2005)................................................................. 13

*Jones v. Agilysys, Inc.*, 2014 WL 2090034 (N.D. Cal. May 19, 2014) ...................................... 11

*K.H. v. Sec'y of Dep't of Homeland Sec.*, 2018 WL 3585142 (N.D. Cal. Jul. 26, 2018)........... 11

*Knight v. Red Door Salons, Inc.*, 2009 WL 248367 (N.D. Cal. Feb. 2, 2009)............... 11, 21, 22

*Laffitte v. Robert Half Int'l Inc.*, 1 Cal. 5th 480, (2016) ............................................. 22

*Lealao v. Beneficial California, Inc.*, 82 Cal. App. 4th 19 (2000) ................................. 22

*Local Joint Executive Bd. of Culinary/Bartender trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152 (9th Cir. 2001) ........................................................................... 16

*Lusby v. GameStop Inc.*, 2015 WL 1501095 (N.D. Cal. Mar. 31, 2015) ........................... 12, 25

*Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350 (11th Cir. 1982)................................ 7, 10, 11

*Ma v. Covidien Holding*, 2014 WL 360196 (C.D. Cal. Jan. 31, 2014) ...................................... 6

*Multi-Ethnic Immigration Workers Organizing Network v. City of Los Angeles*, 246 F.R.D. 621 (C.D. Cal. 2007) ........................................................................... 14

*Murillo v. Pac. Gas 7 Elec.*, 266 F.R.D. 468 (E.D. Cal. 2010) ...................................... 15

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523 (C.D. Cal. 2004) ............... 12

*Officers for Justice v. Civil Service Commission*, 688 F.2d 615 (9th Cir. 1982) .......... 11, 12, 17

*Ontiveros v. Zamora*, 2014 WL 3057506 (E.D. Cal. Jul 7, 2014) ...................................... 21

*Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268 (9th Cir. 1989).................................. 22

*Powers v. Eichen*, 229 F.3d 1249 (9th Cir. 2000) ................................................ 21, 22

*Six Mexican Workers v. Az. Citrus Growers,* 904 F.2d 1301 (9th Cir.1990) ........................... 23

*Staton v. Boeing Co.*, 327 F.3d 938 (9th Cir. 2003) .............................................. 12, 25

*Tumulty v. FedEx Ground Package Sys., Inc.*, 2005 WL 1979104 (W.D. Wash. Aug. 16, 2005)9

*Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227 (9th Cir. 1996) ...................................... 16

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (9th Cir. 2002) ...................................... 22

*Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180 (9th Cir. 2001), *amended by* 273 F.3d 1266 (9th Cir. 2001) ........................................................................... 16

**Statutes**

29 U.S.C. § 201 ........................................................................................................ 1

29 U.S.C. § 207(i) ..................................................................................................... 8

**Regulations**

12 NYCRR § 142-2.2 .............................................................................................. 17

29 C.F.R. § 779.315 ................................................................................................. 7

29 C.F.R. § 779.319 ................................................................................................. 7

Cal. Code Regs., tit. 8 § 11040(3)(D) ..................................................................... 17

**Other Authorities**

Fed. R. Civ. P. 23(a) ......................................................................................... 12, 15

Fed. R. Civ. P. 23(b) ............................................................................................... 16

Fed. R. Civ. P. 23(c) ............................................................................................... 21

Fed. R. Civ. P. 23(e) ............................................................................................... 17

PLAINTIFFS' MOTION FOR PRELIMINARY SETTLEMENT APPROVAL
CASE NO. 17-cv-02533-HSG

**NOTICE OF MOTION AND MOTION**

Please take notice that at 2:00 p.m. on October 25, 2018 or as soon thereafter as the matter may be heard, in Courtroom 2 of the above-captioned Court, Plaintiffs will, and hereby do, move this Court for preliminary approval of the Parties' settlement. This Motion is based on this Notice, the Memorandum of Points and Authorities and accompanying declaration, the Court's file in this matter, and such other arguments or evidence as may be presented at the hearing on the Motion.

**MEMORANDUM OF POINTS AND AUTHORITIES**

### I.     Introduction

Plaintiffs Joseph Bisaccia, Joshua Michi, and Rosie O'Brien (the "Named Plaintiffs") seek preliminary approval of a $2,750,000 class and collective action settlement for approximately 264 individuals who worked for Revel Systems, Inc. as Inside Sales Representatives ("ISRs"). The settlement covers a conditionally certified collective of 151 Named and Opt-in Plaintiffs[1] asserting claims under the Fair Labor Standards Act ("FLSA"), as well as three settlement classes covering California and New York state law claims. This settlement provides excellent and substantial value for individuals with challenging claims, provides for prompt and certain payment, and avoids the need for drawn out litigation. The Court should grant preliminary approval so that notice of the settlement may be distributed to the Opt-in Plaintiffs and the Class Members (collectively, "Plaintiffs").

### II.     Relevant Background and Procedural History

On April May 3, 2017, Plaintiff Joseph Bisaccia, individually, and on behalf of others similarly situated, filed this lawsuit against Defendant Revel Systems, Inc. ("Revel" or "Defendant") seeking unpaid overtime under the FLSA, 29 U.S.C. § 201 *et seq.* (Complaint, ECF. No. 1.) Defendant filed an Answer on June 9, 2017. (Answer, ECF No. 15.)

---

[1] While 151 individuals opted-in, 2 individuals only worked for Revel after it reclassified the ISR position. These individuals are therefore not receiving any payment, but are also not releasing any claims.

Plaintiffs moved for conditional certification on July 18, 2017. (ECF No. 20.) Defendant initially opposed that motion (ECF No. 27), but ultimately stipulated to conditional certification and distribution of judicial notice.[2] (ECF No. 36.) The case now includes 151 Opt-in Plaintiffs. (ECF No. 79.)

The parties participated in mediation on February 5, 2018 but did not reach a settlement. *Id.* Following mediation, Plaintiffs served written discovery requests and took a 30(b)(6) deposition. (Brome Decl. ¶ 3.) On March 15, 2018, Plaintiffs brought a motion to Amend the Complaint to add state law claims on behalf of two new Named Plaintiffs and three putative classes, which Defendant did not oppose, and which the Court granted on June 6, 2018. (ECF Nos. 84, 88, 93.) On June 7, 2018, Plaintiffs filed their First Amended Class and Collective Action Complaint. (ECF No. 94.) Defendant answered on July 7, 2018. (ECF No. 96.)

While Plaintiffs' motion for Leave to File First Amended Complaint was pending, the Parties participated in another mediation with mediator Mark Rudy on May 30, 2018. (ECF No. 97.) The Parties did not reach an agreement at mediation, but subsequently agreed to a mediator's proposal. (*Id.*) On August 16, 2018, the Parties jointly filed a Notice of Settlement to inform the Court that they had reached a tentative settlement, subject to the Court's approval. (ECF No. 97.) The Parties fully executed the Settlement Agreement on September 6, 2018. (Brome Decl. Exh. A.)

**III.     Plaintiffs' claims**

Revel makes and sells mobile point of sales systems. To sell its product, Revel employs a sales team consisting of outside and inside salespersons. Plaintiffs held multiple titles (Sales Executive, Account Executive, and Sales Development Representative, among others). Prior to mid-January 2017, Revel classified these ISRs as overtime-exempt. In mid-January 2017, Revel reclassified its ISRs and began to pay overtime.

---

[2] During the time conditional certification was at issue, the Parties agreed to limited tolling to allow for resolution of *Chatfield v. Revel Systems, Inc.*, San Francisco Superior Court Case No. CGC-16-1551802, a similar wage and hour class action filed against Revel in state court by former sales executives. (ECF No. 33.)

Plaintiffs seek unpaid overtime for the period before January 15, 2017, when ISRs were classified as exempt. The Named Plaintiffs and FLSA Opt-ins seek overtime under the FLSA. Additionally, Plaintiffs assert California claims for state law overtime, meal and rest period premiums, wage statement penalties, timely payment penalties, meal and rest period premiums; Plaintiffs also assert New York claims for state law overtime, and notice and wage statement penalties. The California claims are brought on behalf of ISRs who were based in California (the California Class), and ISRs who were based outside of California but who traveled to and performed work in California (the California Travel Class) for the time (approximately one week per year) that those ISRs worked in California.[3]

**IV.    Settlement terms and relief obtained**

The general structure and terms of the settlement are straightforward: following preliminary approval, notice will be distributed. All Opt-in Plaintiffs who accept their offer, and all Rule 23 Class Members who do not opt-out of the settlement (collectively, "Settlement Class Members"), will receive their allocation following final approval. Several terms are explained in more detail:

Settlement Amount. Defendant will pay a total settlement amount of $2,750,000, which includes settlement payments to all Settlement Class Members, administrative costs, incentive awards, fees and costs award, and all Individual Settlement Payments, including Employee Taxes, but excluding Employer Taxes. (Agreement § I(LL).)

Scope of the Settlement Classes. This settlement includes all Opt-in Plaintiffs who have filed consent to join forms ("Collective Members"), and three Rule 23 settlement classes, which match the class definitions contained in Plaintiffs' First Amended Complaint. (ECF No. 94.) The parties stipulate to the certification of the Rule 23 State Law Settlement Classes for settlement purposes only (Agreement § I(G), (L)):

- The California Class is defined as all ISRs employed by Defendant who worked for Defendant in its California locations and who did not receive payment in

---

[3] ISRs who were based outside of California traveled to California for initial training, and then periodically for company-wide events thereafter.

exchange for a release of California claims through the *Chatfield v. Revel* class action settlement from May 30, 2013 through and until January 15, 2017 and who do not communicate a timely written request for exclusion from the settlement.

- The California Travel Class is defined as all ISRs employed by Defendant who worked for Revel outside of California but who traveled to, and performed work in, California from May 30, 2013 through and until January 15, 2017 and who do not communicate a timely written request for exclusion from the settlement.

- The New York Class is defined as all ISRs who were employed by Defendant in New York from May 30, 2011 through and until January 15, 2017 and who do not communicate a timely written request for exclusion from the settlement.

Allocation. In consultation with Defendant's Counsel, Plaintiffs' Counsel calculated a reasonable allocation of the settlement amounts for all Class and Collective Members. This allocation was calculated using data obtained from Revel in conjunction with information provide by Plaintiffs. (Agreement § III(E).) Plaintiffs' Counsel calculated damages based on a pay-period by pay-period basis, and then allocated the settlement amount on a pro-rata basis to FLSA Opt-ins and members of the California Class and New York Class. Plaintiffs' damage calculations assumed uniform hours of 10 overtime hours per week for the last week of the month and 2.5 hours per week each other week. The damage calculations also reflected: (1) the filing date of the complaint; (2) the parties' tolling agreement; (3) the filing date of each FLSA Collective Member's consent form; (4) whether the pay period is eligible under the applicable state and/or federal statute of limitations; (5) an offset for any payments received through the *Chatfield v. Revel* class action settlement; (6) overtime pay on base salary earnings at 1.5 times the regular rate and on commission earnings at 0.5 times the regular rate for all hours worked over 40 hours in a workweek (and over 8 hours a day under California law, plus double-time over 12 hours in a day); (7) liquidated damages for FLSA opt-ins for each pay period under which they are eligible for FLSA damages; (8) prejudgment interest as assigned to state law overtime damages for New York Class Members; (9) two missed meal periods per week presumed for California class members, with meal periods calculated at the applicable regular

4

rate; (10) waiting time and wage statement penalties calculated per the statute within the requisite statute of limitations; (11) California Travel Class Members will receive a single fixed share of $248.12 for each year they were employed[4]; and (12) a 50% risk of loss reduction on class certification, meal period claims, and California penalty claims. (Agreement § III(E)4.) Based on those assumptions, the realistic value of the Class and Collective Members' total damages amount to $2,803,175.66.[5] (Brome Decl. ¶ 4.) One-third of each individual settlement payment will be allocated to payment of wages, reported on IRS Form W-2, one-third will be allocated as penalties, and one third allocated as interest. (Agreement § III(E).)

Claims Administration. The Parties have agreed that CPT Group (the "Claims Administrator") will distribute notice of the settlement, issue IRS forms and distribute settlement payments out of a qualified settlement fund. (Agreement § III(F).) CPT distributed judicial notice after conditional certification and provided a very reasonable bid for this work.

Non-Revisionary Settlement. The settlement amount is non-revisionary. (Agreement § I(LL).) If any Rule 23 Class Members opt out of the settlement, amounts allocated to those individuals will not revert to Defendant but will be reallocated to participating Plaintiffs. (*Id.* § III(E)(4)(d)(11).) If checks remain uncashed after 120 days, those amounts will be donated to Legal Aid at Work as *cy pres* recipient, subject to Court approval. (*Id.* § III(G)(6)(c).)

Release. The release is tailored to the claims at issue in the case. FLSA Opt-ins will give up their FLSA claims related to work as an ISR and Rule 23 Class Members will give up their state law claims related to their work as an ISR, but will not release their FLSA claims. Additionally, the release only runs through the date Revel reclassified the ISR positions, meaning Class and Collective Members will only give up any claims based on the previous

---

[4] Because Revel's data does not show when California Travel Class Members actually worked in California, this fixed share reflects the average weekly value of the California Class Members' damages and assumes two weeks in California for each year of employment.

[5] Without any reduction for risk of loss, and assuming 10 overtime hours per week for the last week of the month and 2.5 overtime hours for all other weeks, Plaintiffs calculate the total damages as $4,131,440.67. (Brome Decl. ¶ 4.)

1  exempt status. (Agreement § III(A).) The Named Plaintiffs have agreed to a general release of

2  claims; as discussed below, this fact supports awarding the requested enhancement awards.

3      This settlement represents an excellent result for Class and Collective Members, both in

4  terms of monetary value, and the non-monetary terms. After deduction for attorneys' fees

5  (25%)[6], litigation and administration costs (up to $30,000)[7], the Settlement will pay $2,032,500

6  to approximately 264 individuals. Furthermore, the Settlement is non-revisionary, and the

7  release is narrowly-tailored to the claims at issue. (Agreement § III(A)(1-3).)As explained

8  below, the settlement amount is reasonable in light of the damages calculated for Plaintiffs and

9  the litigation risks. *Id.* The settlement amount strongly supports approval. *Compare with, e.g.,*

10  *Ma v. Covidien Holding*, 2014 WL 360196, *5 (C.D. Cal. Jan. 31, 2014) (settlement providing

11  "9.1% of the total value of the action [was] 'within the range of reasonableness.'")

12      The Settlement is also reasonable considering the individual payments. After applying

13  the agreed-upon calculations and the pro-rata distribution, Individual Settlement Amounts

14  average $7,604.17, and range from $248.12 (for 36 individuals who are only receiving payment

15  through the California Travel Class) up to $53,244.24. (Brome Decl. ¶ 5.) Individual Settlement

16  Amounts for FLSA Opt-ins average $11,669.65, and range from $343.94 up to $53,244.24.[8] *Id.*

17  Fifty-six individuals will only receive payment as California Class Members; their payments

18  average $2,999.19. *Id.* Eleven individuals will only receive payment as New York Class

19  Members; their payments average $7,762.25. *Id.* Forty-eight individuals will only receive

20  payment as California Travel Class Members; their payments average $320.49. *Id.*

21

22

23  ─────────────────

   [6] Plaintiffs' Counsel has a one-third contingency agreement with their clients, but only seek

24  25% for this settlement.

   [7] To date, Plaintiffs' Counsel has incurred $16,023 in costs. Counsel will likely incur additional

25  costs finalizing and implementing the settlement and obtaining approval. Counsel will provide
a detailed explanation of costs in conjunction with the motion for attorneys' fees. (Brome.

26  Decl. ¶ 9.)

   [8] These numbers represent the total allocation, based on FLSA damages and state law damages.

27  Most FLSA Opt-ins are also Class Members. Only those individuals who received payment in
the *Chatfield* settlement will receive an allocation based only on FLSA damages.

28

**V.    Argument**

### A. The FLSA settlement is a reasonable compromise of a bona fide dispute

Settlement of FLSA claims for wages are subject to court approval. *Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350, 1353 (11th Cir. 1982). Court approval is favored "to promote the policy of encouraging settlement of litigation," where the settlement reflects a "reasonable compromise over issues" that are "actually in dispute." *Id.* at 1354. Here, the Settlement is a compromise over numerous issues, so approval is warranted.

#### 1.   Risk of Decertification.

While the Parties ultimately stipulated to conditional certification, Defendant indicated it would have sought to decertify the collective had litigation proceeded, and might seek to compel arbitration as to some Plaintiffs. Plaintiffs would have borne the burden of maintaining collective certification despite differing job titles, work locations, earnings history[9], and hours worked by individual Plaintiffs. This settlement provides favorable resolution for all Plaintiffs, without the need for litigating decertification or motions to compel arbitration.

#### 2.   Entitlement to Overtime.

Defendant has asserted that Plaintiffs were overtime exempt under multiple exemptions, including the retail sales exemption. In order to fall within the retail sales and services exemption, an employer must have a traditional retail concept. 29 C.F.R. §§ 779.315-316. A retail establishment must be "ordinarily available to the general public," and "does not take part in the manufacturing process." 29 C.F.R. § 779.319. Plaintiffs argue Revel does not have a traditional retail concept because its offices are not physically available to the general public, and its mobile point of sales software is not available to general public. Instead, Revel's product is only sold to business, and its product is largely created where it is sold. Furthermore, ISRs often did not earn more than 50% of their earnings in commission. *See* 29 U.S.C. § 207(i). While Plaintiffs dispute that Revel has a "retail" character to qualify under 7(i), caselaw on this exemption is inconsistent, and the exemption has not been tested within this industry. A recent

---

[9] Individual earnings are relevant to the retail sales exemption (29 U.S.C. § 207(i)) and the highly compensated exemption (29 C.F.R. § 541.301).

1  Opinion Letter from the Department of Labor recently concluded that an employer that "sells a
2  technology platform to merchants that enables online and retail merchants to accept credit card
3  payments from their customers from a mobile device, online, or in-person" qualified as a retail
4  or service establishment. DOL Opinion Letter FLSA2018-21 (Aug. 28, 2018). As such, there is
5  legal uncertainty with regard to the retail sales exemption's applicability to Plaintiffs, and
6  therefore a *bona fide* dispute.

7        Defendant also argued that the previous settlement in *Chatfield v. Revel* created a waiver
8  or offset defense for some Plaintiffs' FLSA claims. Plaintiffs dispute that any waiver of FLSA
9  claims exist; in fact, the parties in *Chatfield* specifically raised the issue of an FLSA release and
10  that court declined to find an FLSA release. Nevertheless, the current settlement includes an
11  offset of the full amount of the wage portion[10] of the *Chatfield* settlement for all Plaintiffs who
12  received payment through that case. It is likely that further litigation would be necessary on this
13  issue absent settlement. This *bona fide* dispute over Plaintiffs' entitlement to overtime, based
14  on the waiver and exemption defenses, supports settlement approval.

### 3.  Amount of Overtime

16        Even if Plaintiffs established their entitlement to overtime wages, they would need to
17  demonstrate how much overtime was worked. Although Defendant did not have exact time
18  records, it argued Plaintiffs worked little, if any, overtime. Plaintiffs, on the other hand,
19  asserted that they generally worked many hours of overtime per week. Plaintiffs contend that
20  their testimony would be bolstered by Revel's records and electronically stored information and
21  would support substantial overtime. However, proving hours worked is inherently fact-
22  intensive, and would likely require a trial. The amount of Plaintiffs' hours worked is a *bona*
23  *fide* dispute. The compromise reflected here—10 hours of overtime in the last week of the
24  month and 2.5 hours of overtime in other weeks—is very reasonable, and is similar to the
25  amount asserted in the complaint. (ECF No. 1 ¶ 20 ("Plaintiff worked, on average,
26  approximately two to six hours of overtime each week.").)

---

[10] Settlement payments in *Chatfield* were allocated as one-third wages and two-thirds non-wage payments (representing penalties and interest).

1

2                          4.   <u>Applicable Statute of Limitations</u>

3              Assuming that Plaintiffs established that they are entitled to overtime, and proved that

4      they worked overtime hours, the FLSA would only allow two years of damages unless

5      Plaintiffs could show that Revel's violation was willful. Plaintiffs contend that the violation

6      was willful, and that a three-year statute is therefore appropriate. This dispute could

7      dramatically impact Plaintiffs' recovery: applying a two-year statute would significantly reduce

8      Plaintiffs' wage loss. Resolution of this issue could be complicated by the fact that many of the

9      key witnesses—Revel managers who were employed when the ISR positions were created and

10     classified as exempt—are no longer at the company. The statute of limitations presents a *bona*

11     *fide* dispute that favors settlement approval. The settlement here allocates damages with no

12     discount for the third year.

13                          5.   <u>Calculation of Overtime</u>

14             If Plaintiffs established that they were entitled to overtime, they still faced a legal dispute

15     as to the appropriate method for calculating damages. Defendant contended that any award of

16     overtime should be calculated under the "fluctuating workweek" method, in which overtime

17     hours are paid at a rate which multiplies the regular rate by .5, instead of 1.5. Applying the

18     fluctuating workweek would dramatically reduce Plaintiffs' damages. The Ninth Circuit has not

19     yet ruled on retroactive application of the fluctuating workweek in misclassification cases.

20     District courts have come out both ways on the issue. *Compare Boyce v. Independent Brewers*,

21     2016 WL 7188028 (N.D. Cal. Dec. 12, 2016) (considering and rejecting arguments advanced

22     by the employer that the FWW could be used to calculate damages) *with Tumulty v. FedEx*

23     *Ground Package Sys., Inc.*, 2005 WL 1979104, at *5 (W.D. Wash. Aug. 16, 2005) (holding

24     that the fluctuating workweek method of calculation was appropriate where FedEx drivers

25     "clearly understood that they would be paid a fixed weekly salary regardless of the number of

26     hours"). Plaintiffs contend this Court would follow *Boyce* and other similar precedent from

27     district courts in the Ninth Circuit. However, Defendant would vigorously litigate this issue and

28

the calculation of overtime poses another *bona fide* legal issue in dispute. The settlement here does not discount based on the fluctuating workweek.

### 6. Liquidated Damages

The FLSA provides for liquidated damages on unpaid overtime wages, but allows discretion for the Court to reduce or eliminate them if the employer demonstrates a good faith basis for its violation. *See Bratt v. County of Los Angeles*, 912 F.2d 1066, 1071 (9th Cir. 1990). Plaintiffs contend Revel cannot demonstrate good faith, but Revel intended to present arguments that any violation was in good faith. This presents an additional *bona fide* dispute. The damage calculation that formed the basis for the settlement allocation included full liquidated damages on FLSA claims.

### B. The Settlement is a Reasonable Compromise of Disputed Issues and Not a Result of Employer Over-Reach

At the core of *Lynn's Food* is the concept that FLSA settlements must "reflect a reasonable compromise of disputed issues [rather] than a mere waiver of statutory rights brought about by an employer's overreaching." *Lynn's Food Stores*, 679 F.2d at 1354. "Settlements may be permissible in the context of a suit brought by employees under the FLSA for back wages because initiation of the action by the employees provides some assurance of an adversarial context." *Id.* It is clear from the record that this settlement is not a "mere waiver of statutory rights brought about by an employer's overreaching."

*Lynn's Foods* involved an employer who abandoned its negotiations with the Department of Labor and on its own convinced fourteen employees to split a $1,000 settlement amount in exchange for release of over $10,000 in claims. 679 F. 2d at 1352. The settlement here is far from an employer overreach. Plaintiffs' Counsel vigorously litigated this claim, including motion practice, aggressively pursuing discovery, and participating in two mediations. This adversarial nature of this litigation demonstrates the settlement is not collusive or the result of employer overreach.

The settlement reflects a compromise on the disputed issues identified above. Plaintiffs' risk of decertification, entitlement to overtime, amount of overtime, method of calculating

overtime, entitlement to liquidated damages, and the applicable statute of limitations are all disputed; the settlement reflects favorable compromise on these issues. This settlement avoids expenditures of resources for all parties and the Court, and provides "significant benefit that [Plaintiffs] would not receive if the case proceeded— certain and prompt relief." *Barbosa v. Cargill Meat Sol. Corp.*, 297 F.R.D. 431, 446 (E.D. Cal. 2013). The settlement is also reasonable because the proposed release only requires Plaintiffs to release claims they might bring against Revel relating to their classification as exempt ISRs. *Cf., K.H. v. Sec'y of Dep't of Homeland Sec.*, 2018 WL 3585142, at *4 (N.D. Cal. Jul. 26, 2018) (denying approval under *Lynn's Food* standard based on overbroad release and collecting cases). Most importantly, the settlement provides very good value for Plaintiffs' claims assuming approval of the requested fees and costs, the settlement will distribute $2,032,500 after attorneys' fees and costs, which represents approximately 72.5% of the realistic value of their claims. *See Jones v. Agilysys, Inc.*, 2014 WL 2090034, at *2 (N.D. Cal. May 19, 2014) (settlement that "constitutes between 30% to 60% of recoverable damages" supports approval); *Knight v. Red Door Salons, Inc.*, 2009 WL 248367, at *5 (N.D. Cal. Feb. 2, 2009) (recovery of 50% of possible damages was substantial achievement and favored approval).[11] Because the settlement represents a fair and reasonable resolution of a *bona fide* dispute over wages, as opposed to employer overreaching, the Court should approve the settlement.

## C. The class action settlement warrants approval

"Judicial policy strongly favors settlement of class actions." *Deaver v. Compass Bank*, 2015 WL 8526982, at *3 (N.D. Cal. Dec. 11, 2015) (citing *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992)). "It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery will not per se render the settlement inadequate or unfair." *Officers for Justice v. Civil Service Commission*, 688 F.2d 615, 628 (9th Cir. 1982). As the Ninth Circuit noted in *Officers for Justice*, "[u]ltimately the amount of the [settlement payments] will be less than what some class members feel they deserve but, conversely, more

---

[11] The total settlement amount of $2,750,000 is 66.6% of the maximum damages (assuming 10 overtime hours in the last week of the month and 2.5 hours the rest of the month).

than the defendants feel those individuals are entitled to. This is precisely the stuff from which negotiated settlements are made." *Id.* The Court should approve the Settlement because the payments to Plaintiffs are substantial, and they represent a reasonable compromise of Plaintiffs' state law wage and hour claims.

The settlement also reflects compromise in that it avoids the uncertainty of continued litigation. Even if Plaintiffs prevailed, that would take time and resources directed toward litigation. Generally, "unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004). This settlement avoids expenditures of resources for all parties and the Court, and provides a significant benefit over continued litigation: "prompt, guaranteed recovery." *Lusby v. GameStop Inc.*, 2015 WL 1501095, at *6 (N.D. Cal. Mar. 31, 2015). The Court should grant approval.

1.   Proposed Classes Satisfy the Requirements of Rule 23(a)

Where a class action is settled before class certification, the court must "peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement." *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003). The court should address the Rule 23(a) requirements: numerosity, commonality, typicality, and adequacy of representation. *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (citing Fed. R. Civ. P. 23(a)). Here, the state classes satisfy these requirements, and so court approval of the class settlement is appropriate.

a.   Numerosity

Rule 23 requires that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). There is no absolute numerical threshold. *Breeden v. Benchmark Lending Group, Inc.*, 229 F.R.D 623, 628 (N.D. Cal. 2005). Instead, numerosity demands "examination of the specific facts of each case." *Collins v. Cargill Meat Solutions Corp.*, 274 F.R.D. 294, 300 (E.D. Cal. 2011) (citing *Gen. Tel. Co. of the Nw., Inc. v. EEOC*, 446 U.S. 318, 330 (1980)). "'[I]mpracticality' does not mean 'impossibility,' but only the

difficult or inconvenience of joining all members of the class." *Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 913-14 (9th Cir. 1964).

The numerosity requirement is satisfied here because joinder of all members of the proposed Rule 23 class is impracticable. The California Class covers 99 individuals, the New York Class includes 31 individuals, and the California Travel Class is 122 individuals (although there is some overlap between these groups). Furthermore, the employees in the three proposed classes are geographically dispersed throughout the country. Bringing all these individuals before the Court would be impractical. *See Hendershot v. Ready to Roll Transportation, Inc.*, 228 Cal.App.4th 1214, 1222-23 (2014) (applying federal standard and reversing trial court's denial of certification for a group of nine workers and rejecting a bright line test that failed to address "the 'ultimate issue . . . [of] whether the class is too large to make joinder practicable'").

Further, judicial economy is served by resolving the class claims within this proceeding. Particularly given the Parties have reached a settlement that provides substantial relief to class members while preserving their option to opt-out and pursue their claims individually, judicial economy is favored by certifying the claims for settlement purposes. These class members will benefit by receiving a settlement check without having to submit a claim form.

Finally, the fact that many class members have modest claims underscores the value of class treatment. Certifying the classes for settlement purposes is therefore appropriate.

b.      Commonality

In the Ninth Circuit, "Rule 23(a)(2) has been constructed permissively. All questions of fact and law need not be common to satisfy the rule. The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). Commonality is typically satisfied where plaintiffs challenge "a system-wide practice or policy that affects all the putative class members." *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001), *abrogated on other grounds by Johnson v. California*, 543 U.S. 499, 504-05 (2005). Whether class members were subject to a given compensation policy, and

whether that policy was uniformly applied and unlawful are common questions of law and fact that satisfy Rule 23(a)(2). *In re Wells Fargo Home Mortg. Overtime Pay Litig.*, 527 F.Supp.2d 1053, 1065–68 (N.D. Cal. 2007) (finding predominance where, as a general matter, the defendant's policy and practice regarding compensation and exemption was uniform for all putative class members).

Here, the classes are principally bound by the question of whether Defendant improperly classified Plaintiffs as exempt under California or New York law. By improperly classifying Plaintiffs as exempt, Plaintiffs were denied their right to overtime compensation. Plaintiffs' additional class claims are derivative of this common question. The answer to this question does not depend on an individualized analysis and will drive the outcome for all class members. Accordingly, the commonality requirement is satisfied.

c.     Typicality

"Under the rule's permissive standards, representative claims are 'typical' if they are reasonably coextensive with those of absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020; *Multi-Ethnic Immigration Workers Organizing Network v. City of Los Angeles*, 246 F.R.D. 621, 631 (C.D. Cal. 2007). Typicality is satisfied where the class members' claims arise from the same course of events, and class members make similar legal arguments. *Armstrong*, 275 F.3d at 868.

Here, the Plaintiffs' claims are typical of members of the California and New York classes. The Plaintiffs for each class worked in California, New York, or traveled to California during the relevant time periods, and so the same state law claims are advanced as the rest of the classes. Furthermore, Plaintiffs routinely worked more than forty hours per week and more than eight hours per day during the California and New York class periods. Plaintiffs' positions fell into the ISR description and they had the same work duties as members of the classes. Finally, Plaintiffs and the classes were subject to Defendant's policy and practice of improperly classifying ISRs as "exempt" from federal and state wage and hour laws, thus failing to pay them appropriate overtime compensation, waiting penalties, and providing meal breaks. Defendant also failed to maintain accurate records of hours worked for all classes.

1    Plaintiffs' claims are co-extensive with the class members' because Plaintiffs and class

2    members all allege they "were all Defendant's employees, working under the same pay

3    practices and the same company-wide employment policies." *Barbosa*, 297 F.R.D. at 442.

4    Their claims are typical.

5                    d.    Adequacy

6    The adequacy factor requires: (1) that the proposed representative Plaintiff does not have

7    conflicts of interest with the proposed class; and (2) that Plaintiff and competent counsel will

8    vigorously prosecute the action. *Hanlon*, 150 F.3d at 102-21; Fed R. Civ. P. 23(a)(4). Plaintiffs

9    are adequate representatives of the settlement classes. There are no conflicts of interest within

10   the proposed settlement that would pit Plaintiffs against one another or against the class

11   members. Plaintiffs are "part of the class and possess the same interest[s] and suffer the same

12   injur[ies] as class members." *Anchem Products v. Windsor*, 521 U.S. 591, 625-26 (1997).

13   Moreover, the settlement provides payment to the named Plaintiffs on the same formula as

14   class members. While the Settlement provides for modest enhancement awards for the Named

15   Plaintiffs, those do not defeat adequacy, and in this district "a $5,000 payment is presumptively

16   reasonable." *Bellinghausen v. Tractor Supply Company*, 306 F.R.D. 245, 266-67 (N.D. Cal.

17   2015).

18   Plaintiffs and Plaintiffs' counsel satisfy the requirement of vigorous prosecution because

19   competent counsel reached the decision to settle this matter after discovery and mediation with

20   a skilled mediator. (Brome Decl. ¶ 6.) The Court may properly conclude "that plaintiff's

21   counsel has vigorously sought to maximize the return on its labor and to vindicate the injuries

22   of the entire class." *Murillo v. Pac. Gas 7 Elec.*, 266 F.R.D. 468, 467 (E.D. Cal. 2010).

23   Finally, Plaintiffs' counsel is a qualified firm with extensive experience in class action

24   and wage and hour litigation. The Nichols Kaster Firm ("NK") has been in existence for over

25   thirty years, and is focused on advocating for employee and consumer rights. (Brome Decl. Ex.

26   B: Nichols Kaster Firm Resume.) NK has represented thousands of employees in hundreds of

27   cases. (*Id.*) Kevin Allen similarly has extensive experience representing workers in wage and

28   hour disputes. (Brome Decl. ¶ 7.) Moreover, Mr. Allen represented the plaintiffs in *Chatfield*,

1    and so brought particularly relevant experience and knowledge about to this case. (*Id.*) The

2    Representative Plaintiffs and Class Counsel satisfy the adequacy requirement of Rule 23.

3                2.    The Proposed Classes Satisfy the Requirements of Rule 23(b)(3)

4            In addition to satisfying the Rule 23(a) requirements, the proposed classes "must also

5    meet at least one of the requirements of Rule 23(b)." *Barbosa*, 279 F.R.D. at 443. The Rule

6    23(b) requirements, known as predominance and superiority, focus on the relationship between

7    the common and individual issues. "When common questions present a significant aspect of the

8    case and they can be resolved for all members of the class in a single adjudication, there is clear

9    justification for handling the dispute on a representative rather than on an individual basis." *In

10   re Wells Fargo Home Mortg.*, 527 F.Supp.2d at 1064 (citing *Local Joint Executive Bd. of

11   Culinary/Bartender trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1162 (9th Cir. 2001)).

12   Here, as noted above, one common issue binds the proposed class—whether Defendant

13   improperly classified them as exempt from federal and state wage and hour laws. The incorrect

14   classification resulting in failing to pay required overtime drove the filing of this case and

15   forms the basis of this settlement. It is a significant aspect of the case sufficient to find that

16   common issues predominate over individual issues and supports certification of the settlement

17   classes.

18           Likewise, class-wide relief is a superior method of adjudicating this controversy. "Where

19   class-wide litigation of common issues will reduce litigation costs and promote greater

20   efficiency, a class action may be superior to other methods of litigation." *Valentino v. Carter-

21   Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996). In considering whether a class action is

22   superior, the court must focus on whether the interests of "efficiency and economy" would be

23   advanced by class treatment. *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1189 (9th

24   Cir. 2001), *amended by* 273 F.3d 1266 (9th Cir. 2001). Where, as here, a class settlement

25   provides compensation to a group, whose individual damages are modest, the superiority

26   requirement is satisfied. *Barbosa*, 297 F.R.D. at 445. As illustrated above, this settlement

27   provides significant monetary relief for Plaintiffs and putative class members. It would be

28

inefficient and uneconomical to abandon this settlement and force class members to litigate their nearly identical cases individually.

### D.  The proposed Settlement is fundamentally fair, adequate, and reasonable

While the final analysis of whether the proposed settlement is fair, reasonable, and adequate is typically made after a hearing, Fed. R. Civ. P. 23(e)(1)(c), Plaintiffs provide the Court with an initial assessment of these factors in order to facilitate the approval process. The Ninth Circuit's standard of evaluation of the fairness, adequacy, and reasonableness of a settlement requires this Court to balance several factors: the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial' the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement. *Officers for Justice*, 688 F.2d at 625; *see also Hanlon*, 150 F.3d at 1026. As outlined below, these factors support preliminary approval of the settlement

### 1.  The strengths of Plaintiffs' case

As explained above, Plaintiffs contend that Defendant incorrectly classified ISRs as exempt from federal and state overtime laws. By incorrectly classifying ISRs, Defendant failed to pay appropriate overtime compensation, to provide meal breaks, to pay waiting penalties, and to provide accurate wage statements.

As explained above, Plaintiffs dispute the applicability of the Retail Sales Exemption, which also exists under New York Law. (12 NYCRR § 142-2.2 (incorporating FLSA exemptions).). However, California law has a slightly different exemption, for commissioned salespeople, which does not include and requirement about the "retail character" of the employer, and only considers the amount of commission earnings. *See* Cal. Code Regs., tit. 8 § 11040(3)(D). This California exemption poses an additional challenge for Plaintiffs because it eliminates the option to defeat the exemption based on the lack of retail character.

Given Defendant's exemption defenses, liability is not certain. Even if Plaintiffs establish liability, Defendant's arguments regarding hours worked could greatly reduce

Plaintiffs' damages. Liability for the California Travel class involves additional challenges, including showing that the Labor Code applies to workers based out of state who temporarily work in California. The Travel Class would also face challenges proving damages, because employees worked in California for various amounts of time and Revel has not produced records showing when each employee traveled to California.

Plaintiffs' derivative claims also face challenges. For example, while Plaintiffs contend they were not provided with required meal periods, Revel provided lunch for its workers. Revel has argued that Plaintiffs will not be able to establish liability for missed meal periods because not only were they permitted to take lunch, Revel actually provided food at its offices. Additionally, Revel has argued that Plaintiffs' wage statement and waiting time penalty claims will fail because any violations were not "knowing and intentional" (Lab. Code § 226(e)(1)) or not willful (Lab. Code § 203). As with establishing a willful violation under the FLSA, Plaintiffs will face complications in proving these violations because many of the individuals involved in Revel's initial classification decision are no longer employed.

Given the risks inherent in litigation, both on the merits and damages, the Court should approve the settlement.

### 2. The risk, expense, complexity, and duration of further litigation

This case has been litigated efficiently, with both Parties cognizant that full-blown litigation would be costly and protracted. While Defendant stipulated to conditional certification, it would have sought decertification of the collective and would have vigorously opposed class certification. Without this settlement, the Parties would face contested class certification, decertification, and summary judgment motions. This would require additional discovery. Because many of the contested issues are fact-intensive, it is very possible the case would not be resolved on summary judgment, meaning liability and damages would be resolved at trial. Wage and hour trials are complex, expensive, and unpredictable. If Plaintiffs were to prevail on liability, Defendant would likely appeal. Absent this settlement, payment for Plaintiffs would have been uncertain, and would have taken dramatically longer. By way of example, a wage and hour case against U.S. Bank, filed in December 2001, resulted in a

1    substantial verdict for the plaintiffs in September 2008, which was reversed almost six years

2    later by the California Supreme Court. *See Duran v. U.S. Bank, NA*, 59 Cal. 4th 1, 14 (2014).

3    There is no quick and easy route to payment for Class Members absent this settlement. This

4    factor therefore supports approval of the settlement.

5                              3.    The risk of maintaining class action status through trial

6              As noted in section III.B, *supra*, the Parties agree that this case is appropriate for

7    settlement on a class-wide basis. However, Plaintiffs have not yet moved for class certification,

8    and Defendant would have opposed Rule 23 certification.[12] This settlement provides substantial

9    relief to class members which could otherwise be unavailable. Importantly, the Rule 23 Class

10   Members received judicial notice at the time of conditional certification and had the

11   opportunity to join the case to assert their FLSA claims. Subsequently pursuing a class action

12   for individuals who did not opt-in will likely present additional challenges. The Court should

13   approve the settlement.

14                              4.    The amount offered in settlement

15             The settlement amount, $2,750,000, will bring substantial relief to the class members.

16   Settlement payments range from $248.12, for employees who are only receiving pay as

17   California Travel Class Members, up to $53,244.24. (Brome Decl. ¶ 5.) Ten individuals would

18   receive over $30,000 and 48 would receive over $15,000; the average settlement payment, <u>after</u>

19   attorneys' fees and costs, will be $7,604.17.[13] (*Id.*.)

20             The settlement allocation reflects a very good result compared to possible results in

21   litigation. The settlement allocation is fair and reasonable, because it is based on individual

22   earnings and work history, meaning it gives the greatest payment to workers with the largest

23   potential claims. Specifically, Class Counsel calculated damages for all class members based

24

25   ─────────────────────

26   [12] The settlement allocation recognizes the additional difficulty faced by Rule 23 class
     members by assuming a 50% risk of loss for state law claims as compared to the FLSA claims
     which have already been conditionally certified.

27   [13] These allocation amounts will likely increase, because the initial allocation amounts set aside

28   a $25,000 contingency fund to address any issues that arise during the notice process.

on Defendant's records, using individualized compensation records and a uniform hours assumption.

Importantly, Class Counsel reviewed and analyzed payroll data for Rule 23 Class Members and FLSA Opt-Ins prior to mediation. (Brome Decl. ¶ 6.) Armed with this data, Class Counsel was able to analyze potential damages in conjunction with the risk of loss to Class Members. Assuming the Court approves Class Counsel's request of 25% of the settlement fund for fees plus costs, the Settlement will distribute approximately $2,032,500 to participating class members. This is a substantial sum that adequately recognizes Class Members' damages, and compensates them appropriately. The settlement distributes—after fees and costs—at least 72.5% of a realistic value of the case to Accepting Plaintiffs, which strongly supports approval.

5. The extent of discovery completed and the stage of proceedings

As described above, the Parties have begun written discovery, Plaintiffs deposed Defendant's 30(b)(6) witness, and Defendant provided substantial data regarding class members' work and pay history. This data was used to calculate damages for all ISRs, not just the FLSA Opt-ins. The parties engaged in arms-length negotiations with the benefit of plenty of evidence on which to weigh the strengths and weaknesses of the case, and with data necessary to calculate damages. This amount of discovery supports the finding that the Settlement is fair and reasonable.

6. The experienced views of counsel

Class Counsel's experience is outlined *supra* in section IV.C.1.d. As noted there, Class Counsel have extensive experience in nationwide wage and hour litigation. Counsel for all parties agrees that the settlement is fundamentally fair, adequate, and reasonable. This settlement agreement is the result of arms-length negotiations, between experienced counsel representing the interests of the Plaintiffs and Defendant, facilitated by a skilled mediator, after thorough factual and legal investigation.

7. The views of class members

This factor is best addressed following the distribution of the Notice, once the Class Members have received information about the settlement.

1

**E.  The Court should approve the notice forms**

2       The Court must also direct "the best notice that is practicable under the circumstances."

3   Fed. R. Civ. P. 23(c)(2). Here, the Settlement Agreement provides for the settlement

4   administrator to mail notice to all potential class members. (Agreement § III.G.3.) The

5   proposed notice forms are submitted with the accompanying declaration. (Brome Decl. Exhs.

6   C–E.) The Agreement also provides that, if a notice is returned, the Settlement Administrator

7   will perform a skip trace and take any other reasonable steps ensure the notice is received.

8   (Agreement § III.G.3(b).) This procedure has been found to satisfy the Rule 23 notice

9   requirements. *Ontiveros v. Zamora*, 2014 WL 3057506, at *11 (E.D. Cal. Jul 7, 2014). The

10  notice forms "clearly identif[y] the options available to putative class members . . . and

11  comprehensively explain the nature and mechanics of the settlement." *Id.* Accordingly,

12  Plaintiffs request that the Court approve the notice distribution procedures and the forms

13  provided with the Settlement Agreement.

14      **F.  The Court should approve the requested attorneys' fees and costs,**

15           **administration costs, and enhancement awards**

16      In the Ninth Circuit, the typical range of attorneys' fee awards from a common fund

17  recovery is 20 to 33.3 percent, with 25 percent considered the benchmark. *Powers v. Eichen*,

18  229 F.3d 1249, 1256 (9th Cir. 2000). "[I]n most common fund cases, the award exceeds that

19  benchmark." *Knight*, 2009 WL 248367, at *3. California courts routinely approve fee awards in

20  common fund cases at or above 30%. *Barbosa*, 297 F.R.D. at 450 (approving fee award of

21  33%, and collecting nine recent wage and hour cases approving fee awards of 30-33.3%).

22      Plaintiffs will provide detailed briefing on their request for attorneys' fees in a separate

23  motion. *See In re Mercury Interactive Corp. Securities Litigation*, 618 F.3d 988 (9th Cir. 2010).

24  Here, Class Counsel seeks attorneys' fees from the common fund at the benchmark amount of

25  25%, pursuant to the Parties' Settlement Agreement. Given that Class Counsel seeks a modest

26  fee award, Plaintiffs respectfully request that the court defer a detailed attorneys' fee analysis

27  until the motion for attorneys' fees that will follow. This is appropriate since the factors

28  considered in assessing whether the fee award is fair and reasonable (the results obtained, the

risk of litigation, the skill required, the quality of the work performed, the contingent nature of the fee, and awards in similar cases) partially depend on Class Members' responses to the notice of settlement. Plaintiffs' Counsel provides a summary of this analysis to facilitate approval.

1.   The percentage-of-the-benefit method is warranted in this case.

The overwhelming majority of federal and state courts hold that when class action litigation establishes a monetary fund for the benefit of the class members, the court may determine the amount of a reasonable fee based on an appropriate percentage of the fund created. *Laffitte v. Robert Half Int'l Inc.*, 1 Cal. 5th 480, 503 (2016). In group litigation, many class members benefit from the ultimate settlement, but they may not have played a large role in the litigation that led to the payment. *Boeing v. Van Gemert*, 444 U.S. 472, 478 (1980). The common fund approach "thus spread[s] fees proportionately among those benefited by the suit." *Id.* Awarding a percentage of the total fund is routinely approved as a fair way to calculate a reasonable fee when contingency fee litigation has produced a common fund. *See*, *e.g.*, *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989); *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050 (9th Cir. 2002).

Trial courts have the discretion to conduct a lodestar cross-check on a percentage fee, but also retain the discretion to forego a lodestar cross-check and use other means to evaluate the reasonableness of a requested percentage fee. *Laffitte*, 1 Cal. 5th at 506; *see also Lealao v. Beneficial California, Inc.*, 82 Cal. App. 4th 19, 30 (2000). A lodestar cross-check is not required in this circuit, and in some cases is not a useful reference point. *See, e.g., Glass v. UBS Financial Services, Inc.,* 2007 WL 221862 at *16 (N.D. Cal. 2007).

2.   The percentage requested by class counsel is fair and reasonable.

While the Ninth Circuit endorsed a benchmark of 25 percent, *Powers*, 229 F.3d at 1256, the actual percentage of fees awarded varies depending on the facts of each case, and common fund cases often make an award that exceeds the 25 percent benchmark. *Knight*, 2009 WL 248367 at *3. Courts within this district regularly award common fund attorneys' fees above the 25% benchmark in wage and hour cases. *E.g.*, *Burden v. SelectQuote Ins. Services*, 2013

1    WL 3988771, at **4–5 (N.D. Cal. Aug. 2, 2013) (awarding 33% of common fund in attorneys'

2    fees in an overtime misclassification case).

3        Courts consider several factors to determine whether to depart from this benchmark: (1)

4    the results achieved; (2) the risk of litigation; (3) the skill required; (4) the quality of work

5    performed; (5) the contingent nature of the fee and the financial burden; and (6) the awards

6    made in similar cases. *Six Mexican Workers v. Az. Citrus Growers,* 904 F.2d 1301 (9th

7    Cir.1990). Here, these factors support an award of fees at the 25% benchmark.

8        a.   The Result Obtained for the Class and Similar Awards

9        The result obtained for the class is a significant factor to be considered by the Court in

10   making a fee award. *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) ("the most critical factor

11   is the degree of success obtained"). Even a limited comparison to other actions for unpaid

12   overtime highlights the success achieved here. *See, e.g.*, *Deaver*, 2015 WL 8526982, at **7, 11

13   (approving 33% of the fund in attorneys' fees based on "very favorable" results where the total

14   settlement fund equaled "10.7 percent of the total potential liability exposure, before any

15   deductions for fees, costs, or incentive awards.") Here, the total settlement fund equals

16   approximately 72.5% of the realistic value of the claims.

17       b.   Class counsel's experience and skill and complexity of issues

18       This case involved overlapping issues of overtime exemptions under state and federal

19   law, and facts particular to the inside sales industry and startup employers. Counsel's

20   experience in vigorously litigating class/collective wage and hour actions, plus their experience

21   with this industry (Nichols Kaster previously represented ISRs working for a company called

22   Zocdoc, and Velton Zegelman previously represented Revel ISRs in *Chatfield*) were essential

23   in obtaining this favorable and efficient result. Counsel litigated the case efficiently, negotiating

24   an agreement with Defendant to stipulate to conditional certification, and taking sufficient

25   discovery to position the case for favorable settlement without delaying resolution on drawn

26   out litigation. These factors favor approval. *See Adoma v. University of Phoenix, Inc*., 913 F.

27   Supp. 2d 964, 983 (E.D. Cal. 2012) ("[T]he court believes that an award of 29% of the common

28   fund . . . is appropriate. It is important that labor and employment attorneys be rewarded for

1  pursuing novel claims (so long as they are meritorious) and for litigating these claims with

2  tenacity, rather than cherry-picking simple cases or settling difficult cases for small amounts.").

3  c.  Risk of litigation and contingent fees

4  "Courts consistently recognize that the risk of non-payment or reimbursement of

5  expenses is a factor in determining the appropriateness of counsel's fee award." *Bautista v.*

6  *Harvest Mgt. Sub LLC*, 2014 WL 12579822, at *13 (C.D. Cal. Jul. 14, 2014). The contingent

7  nature of the work performed by class counsel and the risk taken in advancing costs, also weigh

8  in favor of determining a higher percentage fee. *See Graham v. Daimler Chrysler Corp.*, 34

9  Cal. 4th 553, 580 (2004) ("A contingent fee must be higher than a fee for the same legal

10  services paid as they are performed. The contingent fee compensates the lawyer not only for the

11  legal services he renders but for the loan of those services."). Plaintiffs' counsel handled this

12  case on a contingency basis. (Brome Decl. ¶ 8.) Plaintiffs' Counsel did not receive any payment

13  for their time spent litigating the case, nor did they receive reimbursement for their out of

14  pocket costs during the litigation. (*Id.*) Plaintiffs' Counsel alone undertook the financial risk of

15  unsuccessful litigation. (*Id.*) This factor favors approval.

16  d.  Reaction of the Class

17  This factor is best addressed following the distribution of the Notice, once the Class

18  Members have had an opportunity to review and join the settlement.

19  3.  The Court should approve costs of up to $20,000

20  Plaintiffs' Counsel also requests approval of up to $20,000 in costs. Payment of these

21  costs is already factored into the allocation. Plaintiffs' Counsel has already incurred $16,023 in

22  unreimbursed costs during this litigation, which it advanced on behalf of Plaintiffs. (Brome

23  Decl. ¶ 9.) Plaintiffs' Counsel will likely incur additional costs in finalizing the settlement.

24  Plaintiffs' Counsel will provide details of these costs in subsequent briefing. Plaintiffs' Counsel

25  therefore requests, and Defendant does not oppose, reimbursement of up to $20,000 in costs.

26  To the extent total costs are less than $20,000, any unexpended costs will be included in the

27  settlement allocations for Accepting Plaintiffs. This amount is also appropriate because

28  Plaintiffs' Counsel's private agreements with their clients (the Opt-in Plaintiffs) provide for

reimbursements of litigation costs in addition to payment of attorneys' fees. (*Id.*) The Court should approve reimbursement of costs.

### 4.   The Court should approve costs of administration up to $10,000

Plaintiffs request that the Court approve CPT Group as the Claims Administrator, and approve payment of up to $10,000 for costs of administration. This amount is reasonable in light of the total settlement value. *Deaver*, 2015 WL 8526982, at *15 (approving $20,000 in administration costs out of $500,000 wage and hour settlement); *Lusby*, 2015 WL 1501095, at *5 (approving "$40,000 in administration costs, or approximately 5.3% of the Gross Settlement Amount.") Here, the requested $10,000 represents less than half of 1% of total amount.

### 5.   The Court should approve Named Plaintiff service awards

The Named Plaintiffs brought this action on behalf of a group of workers so that all of Revel's ISRs could benefit. They were actively involved in the litigation, providing information and assistance to counsel. (Brome Decl. 10.) The Named Plaintiffs took on this responsibility despite the risks of possible stigma and reputational harm. *Deaver*, 2015 WL 8526982, at *15 (enhancement award of $7,500 "is particularly appropriate in this wage and hour class action, where Plaintiff undertook a significant 'reputational risk' in bringing this action against her former employer."). Additionally, the Named Plaintiffs are agreeing to a general release of claims, as opposed to the narrow wage and hour release applicable to Class and Collective Members. All these facts support awarding incentive awards to the Named Plaintiffs. *See Staton*, 327 F.3d at 977. "In this district, a $5,000 payment is presumptively reasonable." *Deaver*, 2015 WL 8526982, at *15 (collecting cases). Here, Plaintiffs seek awards of $5,000— the presumptively reasonable amount—for each of three Named Plaintiffs. If approved, these awards would amount to 0.54% of the total settlement amount. In other words, the awards "will not significantly reduce the amount of settlement funds available to the rest of the class." *Lusby*, 2015 WL 1501095, at *5 (approving a total of $30,000 in enhancement awards out of a $750,000 settlement, or 4% of the total.).

### **CONCLUSION**

For the foregoing reasons, Plaintiffs request that the Court grant preliminary approval

and order the distribution of notice so that Class and Collective Members can learn about the settlement, and ultimately receive compensation for their claims.

Dated: September 20, 2018 **NICHOLS KASTER, LLP**

By:  s/Daniel S. Brome
Daniel S. Brome
Attorneys for Plaintiff and Others
Similarly Situated