UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSEPH BISACCIA, et al., | Case No. 17-cv-02533-HSG |
| Plaintiffs, | **ORDER GRANTING MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT** |
| v. | Re: Dkt. No. 102 |
| REVEL SYSTEMS INC., | |
| Defendant. | |

Pending before the Court is the unopposed motion for preliminary approval of class action settlement filed by Plaintiffs Joseph Bisaccia, Joshua Michi, and Rosie O'Brien. Dkt. No. 102. The parties have reached a settlement regarding Plaintiffs' claims and now seek the required court approval. For the reasons set forth below, the Court **GRANTS** Plaintiffs' motion for preliminary approval of the class action and collective settlement.

## I. BACKGROUND

### A. Factual Background

On May 3, 2017, Plaintiffs filed this putative class action against Defendant Revel Systems Inc. for failure to pay overtime compensation as required under the Fair Labor Standards Act ("FLSA"). *See* Dkt. No. 1 ("Compl."); *see also* 29 U.S.C. §§ 201 *et seq.* Plaintiffs allege that they and other inside sales representatives ("ISR"s) employed by Defendant regularly worked more than 40 hours in a workweek but did not receive overtime compensation. Compl. ¶¶ 18, 20–21. Instead Defendant classified them as "exempt" employees who were not entitled to such overtime compensation. *Id.*

On July 18, 2017, Plaintiffs sought conditional certification of a collective action as to all inside sales employees, across sales titles and across Defendant's various offices. Dkt. No. 20.

Defendant eventually stipulated to conditional certification and distribution of judicial notice to the collective action members. Dkt. No. 36. Judicial notice was distributed pursuant to the parties' agreement, and the case now includes approximately 149 opt-in Plaintiffs. Dkt. No. 102 at 1 and n.1.

On June 7, 2018, Plaintiffs filed an amended complaint asserting putative class action claims under California and New York law in addition to the FLSA claims asserted in the original complaint. Dkt. No. 94 (asserting claims under Cal. Lab. Code §§ 226, 510, 512, 1194, 1198, IWC Wage Orders, Cal. Business and Professions Code §§ 17200 *et seq.*, and the New York Wage Theft Act).

On August 16, 2018, the parties jointly filed a notice of settlement. Dkt. No. 97.

**B.     Settlement Agreement**

Following extensive formal discovery and with the assistance of a mediator, the parties eventually entered into a settlement agreement on September 6, 2018. Dkt. No. 102-2 ("SA"). The key terms are as follows:

Class Definition:  The settlement includes all opt-in Plaintiffs who have filed consent to join forms, as well as three Rule 23 settlement classes, defined as follows:

- The California Class: All ISRs employed by Defendant who worked for Defendant in its California locations and who did not receive payment in exchange for a release of California claims through the *Chatfield v. Revel* class action settlement from May 30, 2013 through and until January 15, 2017 and who do not communicate a timely written request for exclusion from the settlement. SA §§ I(G), I(L).

- The California Travel Class: All ISRs employed by Defendant who worked for Revel outside of California but who traveled to, and performed work in, California from May 30, 2013 through and until January 15, 2017 and who do not communicate a timely written request for exclusion from the settlement. *Id.*

- The New York Class: All ISRs who were employed by Defendant in New York from May 30, 2011 through and until January 15, 2017 and who do not

2

communicate a timely written request for exclusion from the settlement. *Id.*

Settlement Benefits: Defendant will pay a total settlement amount of $2,750,000, including settlement payments to all Class and Collective Members, administrative costs, incentive awards, any attorneys' fees and costs award, and all individual settlement payments, including employee taxes but excluding employer taxes. SA § I(LL). Individual settlement payments will be calculated proportionately based on individualized damages calculations using payroll data provided by Defendant. *See id.* § III(E)(4)(d). Individual settlement amounts will range from $248.12 to $53,244.24. Dkt. No. 102 at 6. The settlement is non-reversionary. *Id.* § III(E)(4)(d)(11).

Release: All settlement class members will release:

- For New York Class Members, any statutory claims for unpaid wages (including but not limited to overtime pay, minimum wage, and regular wages), and claims for interest, penalties, or premiums in connection therewith, as well as any claims under the New York Labor Law, alleged or which could have been alleged under the facts plead in the Complaint during the Class Period. Class Members who are not FLSA Collective Members will not release FLSA claims. SA § I(HH).

- For California Class Members and California Travel Class Members, any statutory claims for unpaid wages (including but not limited to overtime pay, minimum wage, and regular wages), and claims for interest, penalties, or premiums in connection therewith, as well as any claims under the California Labor Code or California Wage Orders alleged or which could have been alleged under the facts plead in the Complaint during the Class Period arising from work performed in California. Class Members who are not FLSA Collective Members will not release FLSA claims. *Id.*

- For FLSA Collective Members, the claims released also include all Fair Labor Standards Act claims against the Released Parties for work performed during the Class Period. *Id.*

Class Notice: A third-party settlement administrator will send class notices via U.S. mail

3

to each member of the classes, using a class list provided by Defendant. SA § III(G)(3)(a). The notice will include: the nature of the action, a summary of the settlement terms, and instructions on how to object to and opt out of the settlement, including relevant deadlines. *See* Dkt. Nos. 102-4, 102-5, 102-6 (proposed notices).

Opt-Out Procedure:  The parties propose that any putative class member who does not wish to participate in the settlement must sign and postmark a written request for exclusion to the settlement administrator no later than 60 days after the date notice is mailed.  SA §§ I(DD), III(G)(5).

Incentive Award:  The Named Plaintiffs will apply for incentive awards of no more than $5,000 each, subject to the approval of the Court.  SA §§ I(Z), III(E)(1).

Attorneys' Fees and Costs:  Plaintiffs will file an application for attorneys' fees not to exceed 25% of the settlement fund, and costs not to exceed $20,000.  SA § III(E)(2).

## II.   PROVISIONAL CLASS CERTIFICATION

The Court first considers whether provisional class certification is appropriate because it is a prerequisite to preliminary approval of a class action settlement.

### A.   Legal Standard

Plaintiffs bear the burden of showing by a preponderance of the evidence that class certification is appropriate under Federal Rule of Civil Procedure 23.  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350–351 (2011).  Class certification is a two-step process.  First, a plaintiff must establish that each of the four requirements of Rule 23(a) is met: numerosity, commonality, typicality, and adequacy of representation.  *Id.* at 349.  Second, she must establish that at least one of the bases for certification under Rule 23(b) is met.  Where, as here, a plaintiff seeks to certify a class under Rule 23(b)(3), she must show that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).

### B.   Analysis

To determine whether provisional certification is appropriate, the Court considers whether

1   the requirements of Rule 23(a) and Rule 23(b)(3) have been met.  As discussed in more detail

2   below, the Court finds those requirements have been met in this case.

3         **i.  Rule 23(a) Certification**

4           **a.  Numerosity**

5        Rule 23(a)(1) requires that the putative class be "so numerous that joinder of all members

6   is impracticable."  Fed. R. Civ. P. 23(a)(1).  The Court finds that numerosity is satisfied here

7   because joinder of the over 200 class members would be impracticable.  *See* Dkt. No. 102 at 12–

8   13.

9           **b.  Commonality**

10       Rule 23(a)(2) requires that "there are questions of law or fact common to the class."  Fed.

11  R. Civ. P. 23(a)(2).  A contention is sufficiently common where "it is capable of classwide

12  resolution—which means that determination of its truth or falsity will resolve an issue that is

13  central to the validity of each one of the claims in one stroke."  *Dukes*, 564 U.S at 350.

14  Commonality exists where "the circumstances of each particular class member vary but retain a

15  common core of factual or legal issues with the rest of the class."  *Parra v. Bashas', Inc.*, 536 F.3d

16  975, 978–79 (9th Cir. 2008).  "What matters to class certification . . . is not the raising of common

17  'questions'—even in droves—but rather the capacity of a classwide proceeding to generate

18  common *answers* apt to drive the resolution of the litigation."  *Dukes*, 564 U.S at 350.  Even a

19  single common question is sufficient to meet this requirement.  *Id.* at 359.

20       The central question in this action is whether Defendant improperly classified Plaintiffs as

21  exempt under California or New York law, and that question is common to all class members and

22  does not require an individualized analysis.  Dkt. No 102 at 14.  Accordingly, the Court finds that

23  the commonality requirement is met in this case.

24          **c.  Typicality**

25       Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical

26  of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  "The test of typicality is whether

27  other members have the same or similar injury, whether the action is based on conduct which is

28  not unique to the named plaintiffs, and whether other class members have been injured by the

same course of conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (internal quotation marks omitted). That said, under the "permissive standards" of Rule 23(a)(3), the claims "need not be substantially identical." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998).

Plaintiffs' claims are both factually and legally similar to those of the putative class because Plaintiffs for each class worked in California or New York, or traveled to California during the relevant time periods. Dkt. No. 102 at 14. Further, both Plaintiffs and the class members were subject to Defendant's alleged policy of classifying employees as "exempt" from federal and state wage and hour laws such that Plaintiffs and all settlement class members were affected in the same way. *Id.* This is sufficient to satisfy the typicality requirement.

### d. Adequacy of Representation

Rule 23(a)(4) requires that the "representative parties will fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(a)(4). The Court must address two legal questions: (1) whether the named Plaintiffs and their counsel have any conflicts of interest with other class members, and (2) whether the named Plaintiffs and their counsel will prosecute the action vigorously on behalf of the class. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 462 (9th Cir. 2000). This inquiry "tend[s] to merge" with the commonality and typicality criteria. *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 158 n.13 (1982). In part, these requirements determine whether "the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Id.*

The Court is unaware of any actual conflicts of interest in this matter and no evidence in the record suggests that either Plaintiffs or proposed class counsel have a conflict with other class members. Dkt. No. 102 at 15. Plaintiffs' counsel has been appointed class counsel in multiple federal class actions. *Id.*; Dkt. No. 102-3. The Court finds that proposed class counsel and Plaintiffs have prosecuted this action vigorously on behalf of the class to date and will continue to do so. The adequacy of representation requirement is therefore satisfied.

### ii. Rule 23(b)(3) Certification

To certify a class, Plaintiffs must also satisfy the two requirements of Rule 23(b)(3). First,

"questions of law or fact common to class members [must] predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). And second, "a class action [must be] superior to other available methods for fairly and efficiently adjudicating the controversy." *Id*. The Court finds that both are met in this case.

### a. Predominance

"The predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (internal quotation marks omitted). The Supreme Court has defined an individual question as "one where members of a proposed class will need to present evidence that varies from member to member . . . ." *Id*. (internal quotation marks omitted). A common question, on the other hand, "is one where the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof." *Id*. (internal quotation marks omitted).

Here, the Court finds for purposes of settlement that the common questions raised by Plaintiffs' claims predominate over questions affecting only individual members of the proposed class. Plaintiffs allege that Defendant incorrectly classified employees resulting in failing to pay required overtime in the same way as to all class members through the same set of actions and decisions. *See* Dkt. No. 102 at 16.

### b. Superiority

The superiority requirement tests whether "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The Court considers four non-exclusive factors: (1) the interest of each class member in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by or against the class; (3) the desirability of concentrating the litigation of the claims in the particular forum; and (4) the difficulties likely to be encountered in the management of a class action. *Id*.

Here, because common legal and factual questions predominate over individual ones, and taking into account the large size of the proposed class, the Court finds that the judicial economy achieved through common adjudication renders class action a superior method for adjudicating the

claims of the proposed class.

### iii.    Class Representative and Class Counsel

Because the Court finds that Plaintiffs meet the commonality, typicality, and adequacy requirements of Rule 23(a), the Court appoints Plaintiffs as class representatives. When a court certifies a class, it must also appoint class counsel. Fed. R. Civ. P. 23(c)(1)(B). Factors that courts should consider when making that decision include:

> (i)     the work counsel has done in identifying or investigating potential claims in the action;
> (ii)    counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;
> (iii)   counsel's knowledge of the applicable law; and
> (iv)    the resources that counsel will commit to representing the class.

Fed. R. Civ. P. 23(g)(1)(A).

In light of Plaintiffs' counsel's extensive experience litigating class actions in federal court, Dkt. No. 102-3, and their diligence in prosecuting this action to date, the Court appoints the Nichols Kaster Firm and Velton Zegelman as class counsel.

## III.    CONDITIONAL CERTIFICATION OF FLSA COLLECTIVE ACTION

Employees may bring a collective action on behalf of other employees who are "similarly situated" under the FLSA. 29 U.S.C.A. § 216(b). Certification of a collective action is within the discretion of the district court. *See Lynn's Food Stores, Inc. v. U.S. By & Through U.S. Dep't of Labor, Employment Standards Admin., Wage & Hour Div.*, 679 F.2d 1350, 1353 (11th Cir. 1982); *Tijero v. Aaron Bros., Inc.*, 301 F.R.D. 314, 323 (N.D. Cal. 2013).

Courts typically make an initial determination at the notice stage of whether plaintiffs are "similarly situated." *See id.*; *Vaszlavik v. Storage Tech. Corp.*, 175 F.R.D. 672, 678 (D.Colo.1997)). "In doing so, a court require[s] nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan." *Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1102 (10th Cir. 2001) (internal quotation marks omitted). "Courts have generally held that the 'similarly situated' standard under the FLSA is not as stringent a standard as the 'common questions predominate' standard under Federal Rule of

Civil Procedure 23(b)(3)." *Harris v. Vector Mktg. Corp.*, 753 F. Supp. 2d 996, 1003 (N.D. Cal. 2010) (collecting cases).

The Court finds, and no party disputes, that Plaintiffs have satisfied the lenient standard for conditional FSLA certification. Plaintiffs have shown the potential FLSA collective action members were subject to the same policy that resulted in Defendant's alleged failure to pay them overtime wages in violation of the FLSA. As discussed above in Section II, Plaintiffs have demonstrated that potential collective action members are "similarly situated" by meeting the more stringent requirements for conditional class certification.

## IV. PRELIMINARY SETTLEMENT APPROVAL[1]

### A. Legal Standard

Federal Rule of Civil Procedure 23(e) provides that "[t]he claims, issues, or defenses of a certified class—or a class proposed to be certified for purposes of settlement— may be settled . . . only with the court's approval." Fed. R. Civ. P. 23(e). "The purpose of Rule 23(e) is to protect the unnamed members of the class from unjust or unfair settlements affecting their rights." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1100 (9th Cir. 2008). Accordingly, before a district court approves a class action settlement, it must conclude that the settlement is "fundamentally fair, adequate and reasonable." *In re Heritage Bond Litig.*, 546 F.3d 667, 674–75 (9th Cir. 2008).

Where the parties reach a class action settlement prior to class certification, district courts apply "a higher standard of fairness and a more probing inquiry than may normally be required under Rule 23(e)." *Dennis v. Kellogg Co.*, 697 F.3d 858, 864 (9th Cir. 2012) (internal quotation marks omitted). In those situations, courts "must be particularly vigilant not only for explicit

---

[1] Though FLSA collective action settlements require court approval, that approval need not occur at the preliminary stage as with a Rule 23 class action. *See Jones v. Agilysys, Inc.*, No. C 12-03516 SBA, 2013 WL 4426504, at *2 (N.D. Cal. Aug. 15, 2013). Nevertheless, on the record provided, the Court preliminarily finds the FLSA collective action settlement to be "fair and reasonable." *Lynn's Food Stores*, 679 F.2d at 1355. Taking into account the total allocation, based on FLSA damages and state law damages, the individual settlement amounts for FLSA Opt-ins average $11,669.65, and range from $343.94 up to $53,244.24. Mot. at 6. Given the risk to Plaintiffs caused by legal uncertainty with regard to the FLSA retail sales exemption's applicability to members of the collective action and with regard to Plaintiffs' entitlement to overtime, *see id.* at 7–8, the Court finds that the settlement amount weighs in favor of granting preliminary approval of the collective action settlement.

collusion, but also for more subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011).

Courts may preliminarily approve a settlement and direct notice to the class if the proposed settlement: (1) appears to be the product of serious, informed, non-collusive negotiations; (2) has no obvious deficiencies; (3) does not grant improper preferential treatment to class representatives or other segments of the class; and (4) falls within the range of possible approval. *See In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007). Courts lack the authority, however, to "delete, modify or substitute certain provisions. The settlement must stand or fall in its entirety." *Hanlon*, 150 F.3d at 1026.

### B. Analysis

#### i. Settlement Process

The first factor the Court considers is the means by which the parties settled the action. "An initial presumption of fairness is usually involved if the settlement is recommended by class counsel after arm's-length bargaining." *Harris v. Vector Mktg. Corp.*, No. 08-cv-5198, 2011 WL 1627973, at *8 (N.D. Cal. Apr. 29, 2011).

Here, class counsel believes, based on significant discovery, that the settlement is fair, adequate, and reasonable. Dkt. No. 102 at 20. The Court consequently finds that this factor weighs in favor of preliminary approval.

#### ii. Preferential Treatment

The Court next considers whether the settlement agreement provides preferential treatment to any class member. The Ninth Circuit has instructed that district courts must be "particularly vigilant" for signs that counsel have allowed the "self-interests" of "certain class members to infect negotiations." *In re Bluetooth.*, 654 F.3d at 947. For that reason, courts in this district have consistently stated that preliminary approval of a class action settlement is inappropriate where the proposed agreement "improperly grant[s] preferential treatment to class representatives." *Tableware*, 484 F. Supp. 2d at 1079.

Although the Settlement Agreement implicitly authorizes each Named Plaintiff to seek

incentive awards of no more $5,000, respectively, for their roles as named plaintiffs in this lawsuit, *see* SA § 1(Z), the Court will ultimately determine whether each Named Plaintiff is entitled to such an award and the reasonableness of the amounts requested. Incentive awards "are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action." *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 958–59 (9th Cir. 2009). Plaintiffs must provide sufficient evidence to allow the Court to evaluate each Named Plaintiff's award "individually, using relevant factors includ[ing] the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . [and] the amount of time and effort the plaintiff expended in pursuing the litigation . . . ." *Stanton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003) (internal quotation marks omitted). The Court will consider the evidence presented at the final fairness hearing and evaluate the reasonableness of any incentive award request. Nevertheless, because incentive awards are not per se unreasonable, the Court finds that this factor still weighs in favor of preliminary approval. *See Rodriguez*, 563 F.3d at 958 (finding that "[i]ncentive awards are fairly typical in class action cases" and "are discretionary") (emphasis omitted).

### iii. Settlement within Range of Possible Approval

The third factor that the Court considers is whether the settlement is within the range of possible approval. To evaluate whether the settlement amount is adequate, "courts primarily consider plaintiffs' expected recovery balanced against the value of the settlement offer." *Tableware*, 484 F. Supp. 2d at 1080. This requires the Court to evaluate the strength of Plaintiffs' case.

Here, each individual class member's recovery will be proportional to that class member's claim. SA § III(F). The individual settlement amounts are expected to range between $248.12 and $53,244.24. Dkt. No. 102 at 6. There is substantial risk Plaintiffs would face in litigating the case given the nature of the asserted claims. *Id.* at 7. Plaintiffs acknowledge, for example, that Plaintiffs and the class members would face the risk of de-certification based on differing job titles, work locations, earnings history, and hours worked by individual Plaintiffs. *Id.* The Court finds that the settlement amount, given this risk, weighs in favor of granting preliminary approval

of the class action settlement.

### iv.    Obvious Deficiencies

The fourth and final factor that the Court considers is whether there are obvious deficiencies in the settlement agreement.  The Court finds no obvious deficiencies, and therefore finds that this factor weighs in favor of preliminary approval.

*        *        *

Having weighed the relevant factors, the Court preliminarily finds that the settlement agreement is fair, reasonable, and adequate, and **GRANTS** preliminary approval of the class action and FLSA collective action settlement.

## V.    MOTION FOR FINAL SETTLEMENT APROVAL AND ATTORNEYS' FEES

The Court **DIRECTS** the parties to include both a joint proposed order and a joint proposed judgment when submitting their motion for final approval.

## VI.    PROPOSED CLASS NOTICE PLAN

For Rule 23(b)(3) class actions, "the court must direct notice to the class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B).

With respect to the content of the notice itself, the notice must clearly and concisely state in plain, easily understood language:

(i)     the nature of the action;
(ii)    the definition of the class certified;
(iii)   the class claims, issues, or defenses;
(iv)    that a class member may enter an appearance through an attorney if the member so desires;
(v)     that the court will exclude from the class any member who requests exclusion;
(vi)    the time and manner for requesting exclusion; and
(vii)   the binding effect of a class judgment on members[.]

Fed. R. Civ. P. 23(c)(2)(B).

The Court finds that the proposed notice, Dkt. Nos. 102-4, 102-5, 102-6, is the best practicable form of notice under the circumstances.

**VII. CONCLUSION**

For the foregoing reasons, the Court **GRANTS** Plaintiffs' motion for preliminary approval of class action settlement. The parties are **DIRECTED** to meet and confer and stipulate to a schedule of dates for each event listed below, which shall be submitted to the Court within seven days of the date of this Order:

| Event | Date |
|---|---|
| Deadline for Settlement Administrator to mail notice to all putative class members | |
| Filing Deadline for attorneys' fees and costs motion | |
| Filing deadline for incentive payment motion | |
| Deadline for class members to opt-out or object to settlement and/or application for attorneys' fees and costs and incentive payment | |
| Filing deadline for final approval motion | |
| Final fairness hearing and hearing on motions | |

The parties are further **DIRECTED** to implement the proposed class notice plan.

**IT IS SO ORDERED.**

Dated:  2/22/2019

HAYWOOD S. GILLIAM, JR.
United States District Judge