1  Matthew C. Helland, CA SBN 250451
2  helland@nka.com
   Daniel S. Brome, CA SBN 278915
3  dbrome@nka.com
   NICHOLS KASTER, LLP
4  235 Montgomery Street, Suite 810
   San Francisco, CA 94104
5  Telephone: (415) 277-7235
   Facsimile: (415) 277-7238
6

7  Kevin Allen, CA State Bar No. 237994
   kallen@allenattorneygroup.com
8  ALLEN ATTORNEY GROUP
   2121 N. California Blvd., Suite 290
9  Walnut Creek, CA 94596
   Telephone: (925) 695-4913
10 Facsimile: (925) 334-7477

11
   Attorneys for Plaintiff and Others
12 Similarly Situated

13
                    IN THE UNITED STATES DISTRICT COURT
14                    NORTHERN DISTRICT OF CALIFORNIA

15
   Joseph Bisaccia, Joshua Michi, and Rosie        Case No. 17-cv-02533-HSG
16 O'Brien, on behalf of themselves and others
   similarly situated,                             **PLAINTIFFS' MOTION FOR FINAL
17                                                  SETTLEMENT APPROVAL AND
                              Plaintiffs,           MEMORANDUM IN SUPPORT**
18
         v.                                         Date:      June 20, 2019
19                                                  Time:      2:00 p.m.
   Revel Systems, Inc.,                             Room:      2, 4th Floor
20
                              Defendant.            Action Filed: May 3, 2017
21

22

23

24

25

26

27

28

1

2

# TABLE OF CONTENTS

3   TABLE OF AUTHORITIES ...................................................................................... iii

4   NOTICE OF MOTION AND MOTION ....................................................................... 1

5   MEMORANDUM OF POINTS AND AUTHORITIES ................................................ 1

6   I.     Introduction ........................................................................................................ 1

7   II.    Relevant background and procedural history .................................................... 1

8      A.   Preliminary approval and distribution of notice .......................................... 1

9      B.   Allocation ..................................................................................................... 2

10     C.   Objectors ...................................................................................................... 4

11  III.   Argument ............................................................................................................ 4

12     A.   The court should grant final approval of the settlement ............................. 4

13     B.   The proposed Settlement is fundamentally fair, adequate, and reasonable ............ 4

14        1.   The strengths of Plaintiffs' case ........................................................... 5

15        2.   The risk, expense, complexity, and duration of further litigation ......... 6

16        3.   The risk of maintaining class action status through trial ..................... 7

17        4.   The amount offered in settlement ......................................................... 8

18        5.   The extent of discovery completed and the stage of proceedings.......... 8

19        6.   The experienced views of counsel......................................................... 9

20        7.   Presence of a Governmental Participant............................................... 9

21        8.   The views of class members ................................................................. 9

22     C.   The FLSA settlement is a reasonable compromise of a bona fide dispute .............. 10

23     D.   Class Certification Should be Maintained for Settlement Purposes........................ 10

24     E.   The Court should approve the requested attorneys' fees and costs, administration

25        costs, and enhancement awards ................................................................. 11

26     F.   The Court Should Approve the *Cy Pres* Recipient .................................... 12

27  CONCLUSION ......................................................................................................... 12

28

# TABLE OF AUTHORITIES

**Cases**

*Aguilar v. Wawona Frozen Foods*, 2017 WL 2214936 (E.D. Cal. May 19, 2017)............ 7, 9, 10

*Covillo v. Specialty's Café*, 2014 WL 954516 (N.D. Cal. 2014) ........................................... 8, 10

*Dermis v. Kellogg Co.*, 697 F.3d 858 (9th Cir. 2012) ................................................................. 14

*Eddings v. Health Net, Inc.*, 2013 WL 3013867 (C.D. Cal. June 13, 2013) .............................. 13

*In re Mercury Interactive Corp. Securities Litigation*, 618 F.3d 988 (9th Cir. 2010) ............... 12

*Jones v. Agilysys, Inc.*, 2014 WL 2090034 (N.D. Cal. May 19, 2014) ...................................... 11

*Knight v. Red Door Salons, Inc.*, 2009 WL 248367 (N.D. Cal. Feb. 2, 2009).......................... 11

*Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350 (11th Cir. 1982)......................................... 4, 11

*Ma v. Covidien Holding*, 2014 WL 360196 (C.D. Cal. Jan. 31, 2014) ........................................ 9

*Mar v. Genuine Parts Co.*, 2017 WL 1495098 (E.D. Cal. Apr. 26, 2017)............................. 4, 11

*McCulloch v. Baker Hughes Inteq Drilling Fluids, Inc.*, 2017 WL 5665848 (E.D. Cal. Nov. 27, 2017)............................................................................................................................................. 13

*Mitchinson v. Love's Travel Stops & Country Stores, Inc.*, 2017 WL 2289342 (E.D. Cal. May 25, 2017)................................................................................................................................ 4, 7, 10

*Moore v. PetSmart, Inc.*, 2015 WL 5439000 (N.D. Cal. Aug. 4, 2015).................................... 13

*Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523 (C.D. Cal. 2004) . 10

*Nelson v. Avon Products, Inc.*, 2017 WL 733145 (N.D. Cal. Feb. 24, 2017) ............. 7, 9, 10, 11

*Officers for Justice v. Civil Service Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982) ...................... 5

*Stovall-Gusman v. W.W. Granger, Inc.*, 2015 WL 3776765 (N.D. Cal. June 17, 2015) ............. 9

**Statutes**

29 U.S.C. § 207(i).......................................................................................................................... 5

Cal. Lab. Code § 203 ..................................................................................................................... 6

Cal. Lab. Code § 226 ..................................................................................................................... 6

**Regulations**

12 NYCRR § 142-2.2...................................................................................................................... 5

29 C.F.R. § 779.315......................................................................................................................... 5

29 C.F.R. § 779.319 ....................................................................................................... 5

Cal. Code Regs., tit. 8 § 11040(3)(D) .......................................................................... 6

**Other Authorities**

DOL Opinion Letter FLSA2018-21 (Aug. 28, 2018) .................................................... 5

**NOTICE OF MOTION AND MOTION**

Please take notice that at 2:00 p.m. on June 20, 2019 or as soon thereafter as the matter may be heard, in Courtroom 2 of the above-captioned Court, Plaintiffs will, and hereby do, move this Court for final approval of the Parties' settlement. This Motion is based on this Notice, the Memorandum of Points and Authorities and accompanying declaration, the Court's file in this matter, and such other arguments or evidence as may be presented at the hearing on the Motion.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    Introduction**

This case was brought by Inside Sales Representatives ("ISRs") who worked for Revel Systems, Inc. seeking unpaid overtime. The case includes 258 individuals: 151 Named and Opt-in Plaintiffs[1] asserting claims under the Fair Labor Standards Act ("FLSA") (many of whom are also state law Class Members), as well as settlement classes covering individuals with California and New York state law claims.

The settlement is worth a total of $2,750,000, which represents very good value for the Class Members. Class Members will receive—after attorneys' fees and costs—an average of $7,818.58.[2] After the 60-day notice period, no objections, disputes, or requests for exclusion were received, and every FLSA Opt-in Plaintiff returned the required release form. In light of this universally favorable response from the Class, and the substantial value the settlement provides for individuals with challenging claims, the Court should grant final approval so this matter may be closed and payments distributed.

**II.    Relevant background and procedural history**

**A. Preliminary approval and distribution of notice**

---

[1] While 151 individuals opted-in, 2 individuals only worked for Revel after it reclassified the ISR position. These individuals are therefore not receiving any payment, but are also not releasing any claims. Additionally, 2 Opt-ins' FLSA claims are time-barred, but are participating in the Settlement because they have timely state law claims.

[2] As explained below, individual amounts have gone up because the contingency fund was allocated to Class Members.

1    The Court granted preliminary approval on February 22, 2019. (ECF No. 108.) Notice
2  was distributed to 258 eligible Class Members and Opt-in Plaintiffs. (Valdez[3] Decl. ¶¶ 4, 6,
3  12.)

4    The Settlement Administrator has conducted a National Change of Address (NCOA)
5  database search that resulted in 29 updated addresses before the initial mailing (*Id.* ¶ 5), and
6  performed a skip trace on four returned Notices without a forwarding address using Accurint
7  (*Id.* ¶ 7.) As a result of the skip trace, new address from the U.S. Post Office, or re-mail request
8  from Counsel or Class/Collective Members themselves, a total of eighteen Notices have been
9  re-mailed to date. (*Id.* ¶ 8.)

10    As of the close of the 60-day notice period, the Administrator had not received any
11  objections, disputes, or request for exclusion. (*Id.* ¶¶ 9–11.) Every FLSA Opt-in Plaintiff
12  returned the required release form. (*Id.* ¶ 12.) In sum, of the 258 Notices of Settlement that
13  were distributed, 258 plaintiffs and class members (100 percent) are participating in the
14  settlement.[4]

15    **B. Allocation**

16    The Notice of Settlement and Consent to Join and Release Forms advised class members
17  of their calculated settlement amount.  (Valdez Dec. Exs. A – C.)

18    As explained in the Preliminary Approval Motion, the Settlement Amount of $2,750,000
19  will include settlement payments to all Settlement Class Members, administrative costs,
20  incentive awards, fees and costs award, and all Individual Settlement Payments, including
21  Employee Taxes, but excluding Employer Taxes. (Agreement § I(LL).)

22    The Settlement Amount is to be allocated pro rata, based Plaintiffs' Counsel individual
23  damage calculations. Plaintiffs' Counsel calculated the value of the claims for all Class and

24
25  [3] Bryan Valdez is a Case Manager at CPT Group, the settlement administrator on this case. His declaration is submitted as Exhibit 1 to the accompanying declaration of Daniel Brome.
26  [4] The Administrator has determined that three Notices were undeliverable. Cass Counsel will continue to attempt to locate these individuals using social media. Accordingly they are treated
27  as participating Class Members, and their amounts have not been reallocated. Plaintiffs will
28  update the Court if these individuals are located prior to the final approval hearing.

Collective Members using data obtained from Revel, information provided by Plaintiffs, and reasonable uniform assumptions about hours worked and likelihood of success. Based on those assumptions, Class and Collective Members' total damages amount to $4,131,440.67.[5] (Brome Decl. ¶ 2.) One-third of each individual settlement payment will be allocated to payment of wages, reported on IRS Form W-2, one-third will be allocated as penalties, and one third allocated as interest. (Agreement § III(E).)

Prior to distribution of Notice, the Settlement Amount was allocated based on each individual's damage amounts, after deducting anticipated attorneys' fees ($687,500), costs ($20,000), administration expenses ($10,000), enhancement awards ($15,000), and a contingency fund ($25,000). (Brome Decl. ¶ 3.) Following the Notice process, the Individual Settlement Amounts have been recalculated. The reallocation reflects that Plaintiffs request $16,306.92 in costs (instead of $20,000), that the costs of administration have increased to $14,000, and that the contingency fund was not needed to cover Class Member disputes and so is being allocated to Class Member payments. (*Id.*) Following the reallocation, the average payment is $7,818.58. (*Id.*) Excluding the California travel class, the average payment is $9,444.11. (*Id.*)

---

[5] This damages analysis assumes: (1) the filing date of the complaint; (2) the parties' tolling agreement; (3) the filing date of each FLSA Collective Member's consent form; (4) whether the pay period is eligible under the applicable state and/or federal statute of limitations, assuming the three-year federal statute of limitations; (5) an offset for any payments received through the *Chatfield v. Revel* class action settlement; (6) 10 overtime hours per week for the last week of the month and 2.5 overtime hours for all other weeks, (7) overtime pay on base salary earnings at 1.5 times the regular rate and on commission earnings at 0.5 times the regular rate for all hours worked over 40 hours in a workweek (and over 8 hours a day under California law, plus double-time over 12 hours in a day); (8) liquidated damages for FLSA opt-ins for each pay period under which they are eligible for FLSA damages; (9) prejudgment interest as assigned to state law overtime damages for New York Class Members; (10) two missed meal periods per week presumed for California class members, with meal periods calculated at the applicable regular rate. (Brome Decl. ¶ 2.) Revel's data does not show when California Travel Class Members actually worked in California. Therefore, California Travel Class Members will receive a single fixed share of $250.71 for each year they were employed. This fixed share reflects the average weekly value of the California Class Members' damages and assumes two weeks in California for each year of employment. (*Id.*)

1    Any money that remains after the distribution of checks and the expiration of the time
2    period to cash settlement checks (120 days from issuance) will be donated to Legal Aid at
3    Work as a *cy pres* beneficiary.  (Agreement § III(G)(6)(c).)

4    **C. Objectors**

5    The settlement administrator has not received any written notice of any objections to the
6    settlement.

7    **III.    Argument**

8    **A.  The court should grant final approval of the settlement**

9    In granting preliminary settlement approval, this Court found the settlement agreement
10   negotiated by the parties to be "fair, reasonable, and adequate." (ECF No. 108.) In the second
11   stage of Rule 23 settlement evaluation, "[h]aving already completed a preliminary examination
12   of the agreement, the court reviews it again, mindful that the law favors the compromise and
13   settlement of class action suits." *Mitchinson v. Love's Travel Stops & Country Stores, Inc.*,
14   2017 WL 2289342, at *3 (E.D. Cal. May 25, 2017). Additionally, "[b]efore approving an
15   FLSA settlement, the court must scrutinize it to determine if it is 'a fair and reasonable
16   resolution of a bona fide dispute.'" *Mar v. Genuine Parts Co.*, 2017 WL 1495098, at *1 (E.D.
17   Cal. Apr. 26, 2017) (quoting *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1354–55
18   (11th Cir. 1982).

19   Here, the substantial value of the settlement to the class members negotiated as a result
20   of arms-length negotiation indicates that the settlement is fair, adequate, and reasonable.  The
21   positive response from class members further supports such a finding.  Accordingly, this Court
22   should approve the settlement so that class members may promptly receive their settlement
23   payments.

24   **B.  The proposed Settlement is fundamentally fair, adequate, and reasonable**

25   The Ninth Circuit's standard of evaluation of the fairness, adequacy, and reasonableness
26   of a settlement asks this Court to balance several factors:

27           the strength of plaintiffs' case; the risk, expense, complexity, and
             likely duration of further litigation; the risk of maintaining class
28           action status throughout the trial; the amount offered in

4

1

2

> settlement; the extent of discovery completed, and the stage of
> the proceedings; the experience and views of counsel; the
> presence of a governmental participant; and the reaction of the
> class members to the proposed settlement.

3    *Officers for Justice v. Civil Service Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982). *See also*

4    *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998). As outlined below, these

5    factors support final approval of the settlement.

6                          1.   The strengths of Plaintiffs' case

7          Plaintiffs contend that Defendant incorrectly classified ISRs as exempt from federal and

8    state overtime laws. By incorrectly classifying ISRs, Defendant failed to pay appropriate

9    overtime compensation, to provide meal breaks, to pay waiting penalties, and to provide

10   accurate wage statements.

11         Revel asserts that its ISRs were correctly classified as exempt; Plaintiffs dispute that any

12   exemption applies. The Parties have focused on the Retail Sales Exemption, which exists under

13   the FLSA and New York Law. *See* 29 C.F.R. §§ 779.315-316; 12 NYCRR § 142-2.2

14   (incorporating FLSA exemptions). Plaintiffs argued Revel does not have a traditional retail

15   concept because its offices are not physically available to the general public, and its mobile

16   point of sales software is not available to general public; instead, Revel's product is only sold

17   to business, and its product is largely created where it is sold.. *See* 29 C.F.R. § 779.319 (retail

18   establishment must be "ordinarily available to the general public," and "does not take part in

19   the manufacturing process." ). Furthermore, ISRs often did not earn more than 50% of their

20   earnings in commission. *See* 29 U.S.C. § 207(i). While Plaintiffs dispute that Revel has a

21   "retail" character to qualify under 7(i), caselaw on this exemption is inconsistent, and the

22   exemption has not been tested within this industry. A recent Opinion Letter from the

23   Department of Labor concluded that an employer that "sells a technology platform to

24   merchants that enables online and retail merchants to accept credit card payments from their

25   customers from a mobile device, online, or in-person" qualified as a retail or service

26   establishment. DOL Opinion Letter FLSA2018-21 (Aug. 28, 2018).

27         Moreover, California law has a slightly different exemption, for commissioned

28   salespeople, which does not include and requirement about the "retail character" of the

employer, and only considers the amount of commission earnings. *See* Cal. Code Regs., tit. 8 § 11040(3)(D). This California exemption poses an additional challenge for Plaintiffs because it eliminates the option to defeat the exemption based on the lack of retail character.

Given Defendant's exemption defenses, liability is not certain. Even if Plaintiffs establish liability, Defendant's arguments regarding hours worked could greatly reduce Plaintiffs' damages. Liability for the California Travel class involves additional challenges, including showing that the Labor Code applies to workers based out of state who temporarily work in California. The Travel Class would also face challenges proving damages, because employees worked in California for various amounts of time and Revel has not produced records showing when each employee traveled to California.

Plaintiffs' derivative claims also face challenges. For example, while Plaintiffs contend they were not provided with required meal periods, Revel offered lunch for its workers. Revel has argued that Plaintiffs will not be able to establish liability for missed meal periods because not only were they permitted to take lunch, Revel actually provided food at its offices. Additionally, Revel has argued that Plaintiffs' wage statement and waiting time penalty claims will fail because any violations were not "knowing and intentional" (Lab. Code § 226(e)(1)) or not willful (Lab. Code § 203). Plaintiffs will face complications in proving these violations because many of the individuals involved in Revel's initial classification decision are no longer employed.

While Plaintiffs maintain they have a strong claim, there are clear risks, which favor approval of the Settlement. *See Nelson v. Avon Products, Inc.*, 2017 WL 733145, at **3–4 (N.D. Cal. Feb. 24, 2017) (granting final approval of wage and hour settlement for 289 salespeople and finding that defendant's asserted exemption defenses, difficulty in proving hours, and risk of decertification weigh in favor of settlement).

2.   The risk, expense, complexity, and duration of further litigation

This case has been litigated efficiently, with both Parties cognizant that full-blown litigation would be costly and protracted. While Defendant stipulated to conditional certification, it would have sought decertification of the collective and would have vigorously

1    opposed class certification. Without this settlement, the Parties would face contested class

2    certification, decertification, and summary judgment motions, all of which would require

3    additional discovery. Employment class actions are "by their nature, time-consuming and

4    expensive to litigate." *Aguilar v. Wawona Frozen Foods*, 2017 WL 2214936, at *3 (E.D. Cal.

5    May 19, 2017). That is certainly the case here, where numerous factual and legal issues would

6    arise if litigation continued. Even if the exemption defenses were resolved through summary

7    judgment, Plaintiffs would need to prove their hours worked. Disputed hours would almost

8    necessarily require a trial, and wage and hour trials are complex, expensive, and unpredictable.

9    If Plaintiffs prevailed at trial, Defendants would likely appeal. Accordingly, there is no quick

10   and easy route to payment for the class members absent this settlement. *See Mitchinson*, 2017

11   WL 2289342, at *4 ("actual recovery through settlement confers substantial benefits on the

12   class that outweigh the potential recovery that could have been obtained through full

13   adjudication of the action."). This factor therefore weighs in favor of approval of the

14   settlement.

15                    3.   The risk of maintaining class action status through trial

16          As noted in section III.B, *supra*, the Parties agree that this case is appropriate for

17   settlement on a class-wide basis. However, Plaintiffs have not yet moved for class certification,

18   and Defendant would have opposed Rule 23 certification.[6] Even if Defendants were not

19   successful in opposing the certification of a Rule 23 class, such a motion would likely require

20   substantial discovery and further delay litigation. "[I]t is indisputable that further litigation

21   would be time-consuming and expensive for both sides." *Covillo v. Specialty's Café*, 2014 WL

22   954516, at *5 (N.D. Cal. 2014). This settlement provides substantial relief to class members

23   which could otherwise be unavailable, and eliminates the need for lengthy discovery and

24   litigation on the issue of class certification. The Court should approve the settlement.

25   _____

26   [6] The settlement allocation recognizes the additional difficulty faced by Rule 23 class members
     by assuming a 50% risk of loss for state law claims as compared to the FLSA claims which
27   have already been conditionally certified, and a 50% risk of loss on meal period claims and
     penalty claims.
28

1

        4.  <u>The amount offered in settlement</u>

2        The settlement amount, $2,750,000, will bring substantial relief to the class members.

3  First, that amount compares very favorably with the value of the claims as calculated by Class

4  Counsel. Under the assumptions outlined above, Counsel calculated the value of the Class and

5  Collective Members' total damages as $4,131,440.67. (Agreement § III(E)4; Brome Decl. ¶ 2.)

6  The total settlement value is therefore equal to 67% of the value of the claim using these

7  assumptions.

8        The Individual Settlement Amounts are also substantial, with payments from $250.71,

9  for employees who are only receiving pay as California Travel Class Members, up to

10  $56,496.54. (Brome Decl. ¶ 3.) Twenty-six individuals will receive over $20,000; the average

11  settlement payment, <u>after</u> attorneys' fees and costs, will be $7,818.58. (*Id.*) Excluding

12  individuals who are only receiving payment as members of the California Travel Class, the

13  average settlement payment will be $9,444.11. (*Id.*)

14        Recovery at this rate strongly supports approval. *See Aguilar*, 2017 WL 2214936, at *3

15  (granting final approval with average payment of $506 per class member representing 47% of

16  the total damages after deductions for fees); *Stovall-Gusman v. W.W. Granger, Inc.*, 2015 WL

17  3776765, at *4 (N.D. Cal. June 17, 2015) (approving settlement worth 7.3 percent of what

18  Plaintiffs estimated could be awarded at trial); *Ma v. Covidien Holding*, 2014 WL 360196, at *5

19  (C.D. Cal. Jan. 31, 2014) (settlement providing "9.1% of the total value of the action [was] 'within

20  the range of reasonableness.'"). The recent *Nelson* case, which concerned a similar number of sales

21  representatives in a claim for overtime, distributed about half as much after the approved

22  deductions as will be distributed in this case. 2017 WL 733145, at **2–6. There, the total

23  settlement represented "more than 12 to 24 percent of the alleged overtime damages" <u>before</u>

24  deductions. *Id.* at *4. Here, before deductions, the settlement value represents 67% of the value

25  of all of Plaintiffs' claims. (Brome Decl. ¶ 2.)

26        This factor strongly favors approval.

27        5.  <u>The extent of discovery completed and the stage of proceedings</u>

28

As described above, the Parties have begun written discovery, Plaintiffs deposed Defendant's 30(b)(6) witness, and Defendant provided substantial data regarding class members' work and pay history. This data was used to calculate damages for all ISRs, not just the FLSA Opt-ins. The parties engaged in arms-length negotiations with the benefit of plenty of evidence on which to weigh the strengths and weaknesses of the case, and with data necessary to calculate damages. *See Nelson*, 2017 WL 733145, at *4 (noting that formal discovery is not required and review of relevant data, such as payroll records—even for a portion of the class— is more important and favors approval). "A settlement following sufficient discovery and genuine arms-length negotiation is presumed fair." *Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004). The amount of discovery parties have thus far conducted supports a finding that the settlement is fair and reasonable.

### 6.  The experienced views of counsel

Class Counsel have extensive experience in nationwide wage and hour litigation. Class Counsel is confident that this settlement is fair and reasonable, and provides excellent value to class members. (Brome Decl. ¶ 4.) The settlement provides clear advantages over continued litigation, including prompt and certain payment. (*Id.*) This settlement agreement is the result of arms-length negotiations, between experienced counsel representing the interests of Plaintiffs and Defendants, facilitated by a skilled mediator, after thorough factual and legal investigation. (*Id.*) This factor favors final approval. *Nelson*, 2017 WL 733145 at *4; *Aguilar*, 2017 WL 2214936, at *4.

### 7.  Presence of a Governmental Participant

There is no governmental participant in this case, rendering this factor neutral. *Nelson*, 2017 WL 733145, at *5; *Mitchinson*, 2017 WL 2289342, at *6.

### 8.  The views of class members

The reaction of the class strongly supports approval. All the FLSA Opt-ins have returned their claim forms, and none of the Rule 23 class members objected to or sought to exclude themselves from the settlement. (Brome Decl. ¶ 5.) The administrator and Plaintiffs' Counsel took steps to ensure that all class members received notice, by performing skip traces and

contacting class members by email. (*Id.*) Taking these steps supports granting approval. *Mitchinson*, 2017 WL 2289342, at *6. The rate of participation here and the lack of objection or rejection to the agreement weighs heavily in favor of final approval. *Id.* (two requests for exclusion); *Covillo*, 2014 WL 954516, at *6 (38% participation with no objections and no opt-outs "strongly favors approval"). Because there have been no objections or requests for exclusion, this factor "strongly favors final approval." *Nelson*, 2017 WL 733145, at *5.

### C.  The FLSA settlement is a reasonable compromise of a bona fide dispute

Settlement of FLSA claims for wages are subject to court approval. *Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350, 1353 (11th Cir. 1982). Court approval is favored "to promote the policy of encouraging settlement of litigation," where the settlement reflects a "reasonable compromise over issues" that are "actually in dispute." *Id.* at 1354. Here, the Settlement is a compromise over numerous issues, so approval is warranted.

As described above and in Plaintiffs' preliminary approval motion (ECF No. 102 at 13–16), there are numerous issues in dispute here: applicability of FLSA exemptions, statute of limitations, appropriateness of collective certification, method of calculating damages, and the actual number of hours worked by Plaintiffs. The settlement reflects a "reasonable compromise" on these issues, in that the class will receive 67% of the value of claims. *See Jones v. Agilysys, Inc.*, 2014 WL 2090034, at *2 (N.D. Cal. May 19, 2014) (settlement that "constitutes between 30% to 60% of recoverable damages" supports approval); *Knight v. Red Door Salons, Inc.*, 2009 WL 248367, at *5 (N.D. Cal. Feb. 2, 2009) (recovery of 50% of possible damages was substantial achievement and favored approval). Additionally, all of the FLSA Opt-ins are participating in the settlement, which favors approval. *Mar*, 2017 WL 1495098, at *2 (94% participation showed class members' approval.). Accordingly, the settlement satisfies the *Lynn's Food* standard, which is less rigorous than the Rule 23 approval standard, and the Court should approve the settlement of Plaintiffs' FLSA claims.

### D.  Class Certification Should be Maintained for Settlement Purposes

In granting preliminary approval, the Court granted provisional class certification. (ECF No. 108 at 4–8.) As explained in the preliminary approval motion, certification is warranted

10

under Rule 23 for the state law settlement classes. (ECF No. 102 at 18–23.) Nothing has changed about the groups of inside sales representatives since the preliminary approval motion. Accordingly, Plaintiffs asks that the Court maintain this certification of the Rule 23 classes and approve the Settlement.

### E. The Court should approve the requested attorneys' fees and costs, administration costs, and enhancement awards

Plaintiffs filed a separate motion for attorneys' fees and costs (ECF No. 112) before the end of the notice period. *See In re Mercury Interactive Corp. Securities Litigation*, 618 F.3d 988 (9th Cir. 2010). As explained there, Class Counsel seeks attorneys' fees from the common fund at the benchmark amount of 25%, pursuant to the Parties' Settlement Agreement. In addition to the factors set out in that motion (the results obtained, the quality of counsel and the work performed, the complexity of the issues, the risk of nonpayment in contingent litigation, and a lodestar cross-check), Plaintiffs note that the Class Members' responses to the notice of settlement supports granting the requested fees.

Similarly, both the preliminary approval motion and the fee motion addressed the reasonableness of awarding enhancement awards to the three Named Plaintiffs. (ECF No. 102 at 31; ECF No. 112 at 19-20.) In addition to the reasons set out previously (specifically: the Named Plaintiffs have been actively involved in this litigation, have taken on reputational risk on behalf of the class, and are agreeing to broader releases; the requested awards are modest compared to the total settlement amount and average class member payment), the reaction of the class supports granting approval. The class notice informed class members that the settlement would distribute "up to $15,000 in service payments to the Named Plaintiffs." (ECF No. 102-5 at 5.) No class members objected to this—or any other—term.

The Court should also approve payment to the Settlement Administrator out of the Total Settlement Amount. During the course of administering the Notice, the Settlement Administrator performed more work than anticipated, and determined that tax reporting would be required in more states than anticipated, and accordingly increased the total expense from $10,000 to $14,000. This higher amount is still reasonable to administer a settlement of this

1    scope. Moreover, the increased cost of administration is balanced out by Plaintiffs' Counsel's

2    reduced cost request: the Court preliminarily approved up to $20,000 in costs, but the actual

3    costs incurred are $16,306.92. And since the Notice distribution set aside $25,000 in a

4    contingency fund, the amount ultimately allocated to Class Members will actually be greater

5    than the amounts reflected in the Notices. The Court should approve the administrative cost.

6        The universally positive reaction of the class supports approval of the requested

7    attorneys' fees and Named Plaintiff enhancement awards.

8            **F.  The Court Should Approve the *Cy Pres* Recipient**

9        In the event that any settlement checks remain uncashed after 120 days, the Settlement

10   Agreement calls for those funds to be donated to Legal Aid at Work as a *cy pres* beneficiary.

11   (Settlement Agreement § III(G)(6)(d), ECF No. 102-2 at 22.) Formerly known as the Legal Aid

12   Society – Employment Law Center, Legal Aid at Work is a non-profit organization "that

13   provides civil legal services to the indigent and pro bono employment law advice to low-

14   income communities." *Moore v. PetSmart, Inc.*, 2015 WL 5439000, at *8 (N.D. Cal. Aug. 4,

15   2015) (approving designation as *cy pres* recipient, noting that "the work performed by the

16   Employment Law Center bears a substantial nexus to the interests of the class members" in a

17   wage and hour case). Legal Aid at Work "works to ensure that all workers benefit from the

18   laws that regulate pay and work hours." *Eddings v. Health Net, Inc.*, 2013 WL 3013867, at *4

19   (C.D. Cal. June 13, 2013). Accordingly, Legal Aid at Work satisfies the Ninth Circuit's

20   standard that a *cy pres* recipient be guided by objectives underlying the statutes at issue and the

21   interests of silent class members. *McCulloch v. Baker Hughes Inteq Drilling Fluids, Inc.*, 2017

22   WL 5665848, at *6 (E.D. Cal. Nov. 27, 2017) (approving Legal Aid at Work as cy pres

23   beneficiary in wage and hour class and collective settlement, citing *Dermis v. Kellogg Co.*, 697

24   F.3d 858, 865 (9th Cir. 2012)).

25                    **CONCLUSION**

26       The Court has already found, on a preliminary basis, that the settlement is "fair,

27   reasonable, and adequate." (ECF No. 108 at 12.) Since that decision, the class members have

28   received notice of the settlement, and all are participating in the settlement. The Court should

1    make that decision final and grant approval of the settlement in all respects and enter the

2    Proposed Order of Judgment.

3

4    Dated: May 16, 2019                     **NICHOLS KASTER, LLP**

5

6                                            By:    s/Daniel S. Brome
                                                    Daniel S. Brome
7                                                   Attorneys for Plaintiff and Others
                                                    Similarly Situated
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28