UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSEPH BISACCIA, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>REVEL SYSTEMS INC.,<br><br>Defendant. | Case No. 17-cv-02533-HSG<br><br>**ORDER GRANTING MOTION FOR FINAL SETTLEMENT APPROVAL AND ATTORNEYS' FEES, COSTS, AND INCENTIVE AWARDS**<br><br>Re: Dkt. Nos. 112, 113 |

Pending before the Court are Plaintiffs' motions for final approval of the class and collective action settlement and for attorneys' fees, costs, and incentive awards. Dkt. Nos. 112, 113. The Court held a final fairness hearing on June 20, 2019. Dkt. No. 116. For the reasons set forth below, the Court **GRANTS** final approval. The Court also **GRANTS** Plaintiffs' motion for attorneys' fees, costs, and incentive awards.

## I.  BACKGROUND

### A.  Factual Background

On May 3, 2017, Plaintiff Joseph Bisaccia filed this putative class action against Defendant Revel Systems Inc. ("Revel") for failure to pay overtime compensation as required under the Fair Labor Standards Act ("FLSA"). *See* Dkt. No. 1 ("Compl."); *see also* 29 U.S.C. §§ 201 *et seq.* The initial complaint alleged that Plaintiff Bisaccia and other inside sales representatives ("ISRs") employed by Defendant regularly worked more than 40 hours in a workweek but did not receive overtime compensation. Compl. ¶¶ 18, 20–21. Instead, Defendant classified them as "exempt" employees who were not entitled to such overtime compensation. *Id.*

On July 18, 2017, Plaintiff sought conditional certification of a collective action as to all ISRs, across sales titles and across Defendant's various offices. Dkt. No. 20. Defendant

eventually stipulated to conditional certification and distribution of judicial notice to the collective action members. Dkt. No. 36. Judicial notice was distributed pursuant to the parties' agreement, and the case now includes approximately 149 opt-in Plaintiffs.[1] Dkt. No. 102 at 1 and n.1; Dkt. No. 113 at 1 n.1.

On June 7, 2018, Plaintiff Bisaccia, along with new Named Plaintiffs Rosie O'Brien and Joshua Michi, filed an amended complaint asserting putative class action claims under California and New York law in addition to the FLSA claims asserted in the original complaint. Dkt. No. 94 (asserting claims under Cal. Lab. Code §§ 226, 510, 512, 1194, 1198, IWC Wage Orders, Cal. Business and Professions Code §§ 17200 *et seq.*, and the New York Wage Theft Act).

The parties participated in two mediations and were eventually able to reach an agreement. Dkt. No. 102 at 2. On August 16, 2018, the parties jointly filed a notice of settlement. Dkt. No. 97. The parties fully executed the Settlement Agreement on September 6, 2018, and filed a motion for preliminary approval of class and collective action settlement on September 20, 2018. Dkt. No. 102 at 2. The Court granted preliminary approval of the settlement on February 22, 2019. Dkt. No. 108.

**B.  Settlement Agreement**

Following extensive formal discovery and with the assistance of a mediator, the parties eventually entered into a settlement agreement on September 6, 2018. Dkt. No. 102-2 ("SA"). The key terms are as follows:

<u>Collective Member Definition</u>:  The settlement includes all ISRs who were employed by Defendant from May 30, 2014 through and until January 15, 2017, and who properly and timely submitted a consent to join collective action form.  SA §§ I(I), I(L).

<u>Class Definition</u>:  The settlement includes three Rule 23 settlement classes, defined as follows:

- <u>The California Class</u>: All ISRs employed by Defendant who worked for Defendant in its California locations and who did not receive payment in exchange for a

---

[1] Two individuals have FLSA claims that are time-barred, but have timely state law claims and therefore are still participating in the Settlement.

release of California claims through the *Chatfield v. Revel* class action settlement from May 30, 2013 through and until January 15, 2017, and who do not communicate a timely written request for exclusion from the settlement. SA §§ I(G), I(L).

- The California Travel Class: All ISRs employed by Defendant who worked for Revel outside of California but who traveled to, and performed work in, California from May 30, 2013 through and until January 15, 2017, and who do not communicate a timely written request for exclusion from the settlement. *Id.*

- The New York Class: All ISRs who were employed by Defendant in New York from May 30, 2011 through and until January 15, 2017, and who do not communicate a timely written request for exclusion from the settlement. *Id.*

Settlement Benefits: Defendant will pay a total settlement amount of $2,750,000, including settlement payments to all Class and Collective Members, administrative costs, incentive awards, any attorneys' fees and costs award, and all individual settlement payments, including employee taxes but excluding employer taxes. SA § I(LL). Individual settlement payments will be calculated proportionately based on individualized damages calculations using payroll data provided by Defendant. *See id.* § III(E)(4)(d). Individual settlement amounts will range from $250.71 to $56,496.54. Dkt. No. 113-1 ¶ 3. The average settlement payment after deducting any attorneys' fees and costs is approximately $7,818.58. *Id*. The settlement is non-reversionary. SA § III(E)(4)(d)(11).

Release: All settlement Class and Collective Members will release:

- For New York Class Members, any statutory claims for unpaid wages (including but not limited to overtime pay, minimum wage, and regular wages), and claims for interest, penalties, or premiums in connection therewith, as well as any claims under the New York Labor Law that were alleged or could have been alleged under the facts pled in the Complaint during the Class Period. Class Members who are not FLSA Collective Members will not release FLSA claims. SA § I(HH).

- For California Class Members and California Travel Class Members, any statutory

3

claims for unpaid wages (including but not limited to overtime pay, minimum wage, and regular wages), and claims for interest, penalties, or premiums in connection therewith, as well as any claims under the California Labor Code or California Wage Orders that were alleged or could have been alleged under the facts pled in the Complaint during the Class Period arising from work performed in California. Class Members who are not FLSA Collective Members will not release FLSA claims. *Id.*

- For FLSA Collective Members, all FLSA claims that were alleged or could have been alleged under the facts pled in the Complaint during the Class Period arising from work performed during the Class Period. *Id.*

Class and Collective Notice: A third-party settlement administrator will send class notices via U.S. First-Class Mail to each member of the classes, using a class list provided by Defendant. SA § III(G)(3)(a). The notice will include: the nature of the action, a summary of the settlement terms, and instructions on how to object to and opt out of the settlement, including relevant deadlines. *See* Dkt. Nos. 102-4, 102-5, 102-6 (proposed notices).

Opt-Out Procedure: The parties propose that any putative class member who does not wish to participate in the settlement must sign and postmark a written request for exclusion to the settlement administrator no later than 60 days after the date notice is mailed. SA §§ I(DD), III(G)(5).

Incentive Award: The Named Plaintiffs will apply for incentive awards of no more than $5,000 each, subject to the approval of the Court. SA §§ I(Z), III(E)(1).

Attorneys' Fees and Costs: Plaintiffs will file an application for attorneys' fees not to exceed 25% of the settlement fund, and costs not to exceed $20,000. SA § III(E)(2).

**II.      ANALYSIS**

   **A.      Final Settlement Approval**

       **i.      Class Certification**

Final approval of a class action settlement requires, as a threshold matter, an assessment of whether the class satisfies the requirements of Federal Rule of Civil Procedure 23(a) and

4

(b). *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1019–1022 (9th Cir. 1998). Because no facts that would affect these requirements have changed since the Court preliminarily approved the class action on February 22, 2019, this order incorporates by reference its prior analysis under Rules 23(a) and (b) as set forth in the order granting preliminary approval. [2] *See* Dkt. No. 108 at 4–8.

### ii. The Settlement

"The claims, issues, or defenses of a certified class may be settled . . . only with the court's approval." Fed. R. Civ. P. 23(e). The Court may finally approve a class settlement "only after a hearing and on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2); *Officers for Justice v. Civil Serv. Comm'n of the City and County of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982) ("The district court's role in evaluating a proposed settlement must be tailored to fulfill the objectives outlined above. In other words, the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties . . . "). To assess whether a proposed settlement comports with Rule 23(e), the Court "may consider some or all" of the following factors: (1) the strength of plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed, and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement. *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 963 (9th Cir. 2009); *see also Hanlon*, 150 F.3d at 1026. "The relative degree of importance to be attached to any particular factor" is case specific. *Officers for*

---

[2] Certification of FLSA collective action is within the discretion of the district court. *See Lynn's Food Stores, Inc. v. U.S. By & Through U.S. Dep't of Labor, Employment Standards Admin., Wage & Hour Div.*, 679 F.2d 1350, 1353 (11th Cir. 1982); *Tijero v. Aaron Bros., Inc.*, 301 F.R.D. 314, 323 (N.D. Cal. 2013). The requirements for class certification are more stringent than the "similarly situated" standard under FLSA certification. *See Harris v. Vector Mktg. Corp.*, 753 F. Supp. 2d 996, 1003 (N.D. Cal. 2010) (collecting cases). Therefore, by meeting the requirements for class certification, Plaintiffs have also satisfied the requirements for collective action certification.

*Justice*, 688 F.2d at 625.

In addition, "[a]dequate notice is critical to court approval of a class settlement under Rule 23(e)." *Hanlon*, 150 F.3d at 1025. As discussed below, the Court finds that the proposed settlement is fair, adequate, and reasonable, and that Class and Collective Members received adequate notice.[3]

### a. Adequacy of Notice

Under Federal Rule of Civil Procedure 23(e), the Court "must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). Rule 23(c)(2)(B) requires "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." The notice must "clearly and concisely state in plain, easily understood language" the nature of the action, the class definition, and the class members' right to exclude themselves from the class. Fed. R. Civ. P. 23(c)(2)(B). Although Rule 23 requires that reasonable efforts be made to reach all class members, it does not require that each class member actually receive notice. *See Silber v. Mabon*, 18 F.3d 1449, 1454 (9th Cir. 1994) (noting that the standard for class notice is "best practicable" notice, not "actually received" notice).

The Court finds that the notice and notice plan previously approved by the Court was implemented and complies with Rule 23(c)(2)(B). *See* Dkt. No. 108 at 12–13; Dkt. No. 111. According to the Settlement Agreement, the third-party settlement administrator was to send notice via U.S. First-Class Mail based on a data file Defendant provided. Dkt. No. 108 at 3, 12. Before sending notice, the third-party claims administrator, CPT Group, Inc. ("CPT"), performed a search for updated addresses in the National Change of Address database and updated 29 addresses. Dkt. No. 113-1 ¶ 5. CPT represents that notice was then mailed via U.S. First-Class

---

[3] FLSA collective action settlements also require court approval. *See Jones v. Agilysys, Inc.*, No. C 12-03516 SBA, 2013 WL 4426504, at *2 (N.D. Cal. Aug. 15, 2013). A proposed FLSA settlement will be approved only if the court determines that the settlement is a "fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Id*. (quotations omitted). As the Court explained in its preliminary approval order, and for the same reasons discussed in the following section, the proposed FLSA settlement constitutes a fair and reasonable resolution of a bona fide dispute. Dkt. No. 108 at 9 n.1.

6

mail to the Class and Collective Members. *Id*. ¶ 6. A total of 258 notices were sent out. *Id*. ¶¶ 4, 6. Four notices were returned as undeliverable, so CPT performed a "Skip Trace" to identify more recent addresses. *Id*. ¶ 7. As a result of using Skip Trace, along with re-mail requests from Class Counsel or the Class and Collective Members themselves, a total of 18 notices were re-mailed. *Id*. ¶ 8. As of May 16, 2019, 3 notices were undeliverable. *Id*.

In light of these facts, the Court finds that the parties have sufficiently provided the best practicable notice to the Class and Collective Members.

### b. Fairness, Adequacy, and Reasonableness

Having found the notice procedures adequate under Rule 23(e), the Court next considers whether the entire settlement comports with Rule 23(e).

#### 1. Strength of Plaintiffs' Case and Litigation Risk

Approval of a class settlement is appropriate when plaintiffs must overcome significant barriers to make their case. *Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 851 (N.D. Cal. 2010). Courts "may presume that through negotiation, the Parties, counsel, and mediator arrived at a reasonable range of settlement by considering Plaintiff's likelihood of recovery." *Garner v. State Farm Mut. Auto. Ins. Co.*, No. 08-cv-1365-CW, 2010 WL 1687832, at *9 (N.D. Cal. Apr. 22, 2010). Additionally, difficulties and risks in litigating weigh in favor of approving a class settlement. *Rodriguez*, 563 F.3d at 966. "Generally, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Ching v. Siemens Indus., Inc.*, No. 11-cv-04838-MEJ, 2014 WL 2926210, at *4 (N.D. Cal. June 27, 2014) (quotations omitted).

The Court finds that the amount offered in settlement is reasonable in light of the complexity of this litigation and the substantial risk Plaintiffs would face in litigating the case given the complex nature of the asserted claims. *See* Dkt. No. 113 at 5–6. Defendant had several exemption defenses that could either preclude or limit Plaintiffs' liability and reduce Class and Collective Members' recovery. Dkt. No. 113 at 5–6. Although Defendant stipulated to conditional certification of the collective action, it would have opposed class certification and sought decertification of the collective action. *Id*. at 6–7. In reaching a settlement, Plaintiffs have

7

ensured a favorable recovery for the members. *See Rodriguez*, 563 F.3d at 966 (finding litigation risks weigh in favor of approving class settlement). Accordingly, these factors weigh in favor of approving the settlement. *See Ching*, 2014 WL 2926210, at *4 (favoring settlement to protracted litigation).

### 2. Risk of Maintaining Class Action Status

In considering this factor, the Court looks to the risk of maintaining class certification if the litigation were to proceed. Certifying a class encompassing approximately 258 employees (with the added difficulty of maintaining certification of a collective action) presents complex issues—especially in the context of labor laws—that could undermine certification. Dkt. No. 113 at 7. Accordingly, this factor also weighs in favor of settlement.

### 3. Settlement Amount

The amount offered in the settlement is another factor that weighs in favor of approval. Based on the facts in the record and the parties' arguments at the final fairness hearing, the Court finds that the $2,750,000 settlement amount, which represents approximately 67% of Defendant's maximum potential exposure, falls well "within the range of reasonableness" in light of the risks and costs of litigation. *See* Dkt. No. 113-1 ¶ 2; *see, e.g.*, *Hendricks v. Starkist Co.*, No. 13-CV-00729-HSG, 2016 WL 5462423, at *12 (N.D. Cal. Sept. 29, 2016), *aff'd sub nom. Hendricks v. Ference*, 754 F. App'x 510 (9th Cir. 2018); *Villanueva v. Morpho Detection, Inc.*, No. 13-cv-05390-HSG, 2016 WL 1070523 *4 (N.D. Cal. March 18, 2016) (citing cases); *Stovall-Gusman v. Granger, Inc.*, No. 13-cv-02540-HSG, 2015 WL 3776765, at *4 (N.D. Cal. June 17, 2015) (granting final approval of a net settlement amount representing 7.3% of the plaintiffs' potential recovery at trial). The parties have estimated that the recovery of each individual member will range from $250.71 to $56,496.54. Dkt. No. 113-1 ¶ 3. The average settlement payment, after deducting the requested attorneys' fees, costs, and incentive awards, is approximately $7,818.58.[4]

---

[4] The majority of the members (192) will be receiving an amount of $10,000 or less. Dkt. No. 117 ¶ 2. Twenty-six members will be receiving over $20,000, and 40 will be receiving an amount between $10,000 and $20,000. *Id*.

*Id.* This factor therefore weighs in favor of approval.

### 4. Extent of Discovery Completed and Stage of Proceedings

The Court finds that Class Counsel had sufficient information to make an informed decision about the merits of the case. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000). The parties started written discovery, took Defendant's 30(b)(6) deposition, and engaged in a thorough review of the members' work and pay history. Dkt. No. 113 at 9. This factor weighs in favor of approval.

### 5. Experience and Views of Counsel

The Court next considers the experience and views of counsel, and finds that this factor also weighs in favor of approval. "[P]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *Rodriguez*, 563 F.3d at 967 (quotations omitted). Accordingly, "[t]he recommendations of plaintiffs' counsel should be given a presumption of reasonableness." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008). Class Counsel represents that it has extensive experience in nationwide labor and wage actions. Dkt. No. 113 at 9. The Court recognizes, however, that courts have diverged on the weight to assign counsel's opinions. *Compare Carter v. Anderson Merch.*, LP, 2010 WL 1946784, at *8 (C.D. Cal. May 11, 2010) ("Counsel's opinion is accorded considerable weight."), *with Chun-Hoon*, 716 F. Supp. 2d at 852 ("[T]his court is reluctant to put much stock in counsel's pronouncements. . . ."). This factor's impact is therefore modest, but favors approval.

### 6. Reaction of Class and Collective Members

The reaction of the Class and Collective Members supports final approval. "[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528–29 (C.D. Cal. 2004); *In re Linkedin User Privacy Litig.*, 309 F.R.D. 573, 589 (N.D. Cal. 2015) ("A low number of opt-outs and objections in comparison to class size is typically a factor that supports settlement approval.").

Notice was served on each Class and Collective Member in accordance with the method

approved by the Court. The notice advised the Class Members of the requirements to object or opt out of the settlement and advised the Collective Members of the requirements to submit their release form. Dkt. No. 113-2 ¶ 6. The deadline to submit a claim and/or the release form was May 7, 2019. *Id.* CPT received no objections and requests for exclusion, and all collective members who did not have time-barred FLSA claims submitted their release form. *See id.* ¶¶ 9–12; Dkt. No. 113 at 10. The Court finds that the lack of objections and opt-outs, and the submission of release forms by all Collective Members who opted in, indicate overwhelming support among the Class and Collective Members, weighing in favor of approval. *See*, *e.g.*, *Churchill Village LLC v. Gen. Elec.*, 361 F.3d 566, 577 (9th Cir. 2004) (affirming settlement where 45 of approximately 90,000 class members objected); *Rodriguez v. West Publ. Corp.*, Case No. CV05–3222 R, 2007 WL 2827379, at *10 (C.D. Cal. Sept. 10, 2007) (finding favorable class reaction where 54 of 376,301 class members objected).

\* \* \*

After considering and weighing the above factors, the Court finds that the settlement agreement is fair, adequate, and reasonable, and that the Class and Collective Members received adequate notice. Accordingly, Plaintiffs' motion for final settlement approval is **GRANTED**.

### B. Attorneys' Fees, Costs, and Incentive Awards

Class Counsel asks the Court to approve an award of $687,500 in attorneys' fees and $16,307 in costs. Dkt. No. 112 at 1. Class Counsel also seeks a $5,000 incentive award for each of the three Named Plaintiffs. Dkt. No. 112 at 14–15.

#### i. Attorneys' Fees

##### a. Legal Standard

"In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). The Court has discretion in a common fund case to choose either (1) the lodestar method or (2) the percentage-of-the-fund when calculating reasonable attorneys' fees. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002).

Under the percentage-of-recovery method, twenty-five percent of a common fund is the

benchmark for attorneys' fees awards. *See*, *e.g.*, *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011) ("[C]ourts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award, providing adequate explanation in the record of any 'special circumstances' justifying a departure."); *Six Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990). Whether the Court awards the benchmark amount or some other rate, the award must be supported "by findings that take into account all of the circumstances of the case." *Vizcaino*, 290 F.3d at 1048.

Under the lodestar method, a "lodestar figure is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer." *In re Bluetooth*, 654 F.3d at 941(*citing Staton v. Boeing Co.*, 327 F.3d 938, 965 (9th Cir. 2003)). "[T]he established standard when determining a reasonable hourly rate is the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008) (quotations omitted). Generally, "the relevant community is the forum in which the district court sits." *Id*. (citing *Barjon v. Dalton*, 132 F.3d 496, 500 (9th Cir. 1997)). Typically, "affidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases . . . are satisfactory evidence of the prevailing market rate." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990). "In addition to affidavits from the fee applicant, other evidence of prevailing market rates may include affidavits from other area attorneys or examples of rates awarded to counsel in previous cases." *Schuchardt v. Law Office of Rory W. Clark*, 314 F.R.D. 673, 687 (N.D. Cal. 2016).

Although "the choice between lodestar and percentage calculation depends on the circumstances, [ ] either method may [ ] have its place in determining what would be reasonable compensation for creating a common fund." *Six Mexican Workers*, 904 F.2d at 1311 (quotations omitted). To guard against an unreasonable result, the Ninth Circuit has encouraged district courts to cross-check any calculations done in one method against those of another method. *Vizcaino*, 290 F.3d at 1050–51.

### b. Discussion

Class Counsel here seeks $687,500 in fees, or 25% of the settlement amount. *See* Dkt. No. 112 at 1. This is in line with the benchmark for a reasonable fee award under the percentage-of-recovery method and is thus presumptively reasonable. *See*, *e.g.*, *In re Bluetooth*, 654 F.3d at 942.

The Court also finds the fee request reasonable under the lodestar method. In calculating its lodestar, Class Counsel contends that it collectively expended a combined total of 875.9 hours. Dkt. No. 112-1 ¶¶ 12, 15 (815.9 hours from Nichols Kaster, LLP); Dkt. No. 112-2 ¶ 9 (60 hours from Allen Attorney Group). Class Counsel also represents that it anticipates expending an additional 40 hours of work to resolve the matter, bringing the hours for the lodestar calculation to 915.9 hours. Dkt. No. 112 at 11; Dkt. No. 112-1 ¶ 11. With respect to hourly rates, the rates requested are $175 for clerks and paralegals, $425 for senior associates, and $625 to $675 for partners. Dkt. No. 112-1 ¶ 12; Dkt. No. 112-2 ¶ 9. The Court finds that the billing rates used by Class Counsel to calculate the lodestar are reasonable and in line with prevailing rates in this district for personnel of comparable experience, skill, and reputation. *See, e.g.*, *Hefler v. Wells Fargo & Co.*, No. 16-CV-05479-JST, 2018 WL 6619983, at *14 (N.D. Cal. Dec. 18, 2018) (rates from $650 to $1,250 for partners or senior counsel, $400 to $650 for associates); *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, No. 2672 CRB (JSC), 2017 WL 1047834, at *5 (N.D. Cal. Mar. 17, 2017) (billing rates ranging from $275 to $1600 for partners, $150 to $790 for associates, and $80 to $490 for paralegals reasonable "given the complexities of this case and the extraordinary result achieved for the Class").

According to Class Counsel, based on the number of hours billed and expected and the hourly rates, this yields a total lodestar of $307,867.50. Dkt. No. 112 at 11; Dkt. No. 112-1 ¶ 11; Dkt. No. 112-2 ¶ 9. Class Counsel thus is seeking fees with a 2.23 lodestar multiplier. Dkt. No. 112 at 13. This lodestar multiplier supports the reasonableness of the fee request and falls within the range of reasonableness. *See, e.g.*, *Vizcaino*, 290 F.3d at 1051 (no abuse of discretion where district court awarded 28% fee with cross-check lodestar multiplier of 3.65); *Fowler v. Wells Fargo Bank, N.A.*, No. 17-CV-02092-HSG, 2019 WL 330910, at *7 (N.D. Cal. Jan. 25, 2019) (benchmark award of 25% of settlement fund with lodestar multiplier of approximately 3.46

12

reasonable in light of length of case and procedural posture); *Lazarin v. Pro Unlimited, Inc.*, No. C11-03609 HRL, 2013 WL 3541217, at *8 (N.D. Cal. July 11, 2013) (lodestar multiplier of 3.36 reasonable and did not warrant a downward departure from 25% benchmark); *Buccellato v. AT & T Operations, Inc.*, No. C10-00463-LHK, 2011 WL 3348055, at *1–2 (N.D. Cal. June 30, 2011) (approving $3,125,000 in fees, representing 25% of the settlement fund and a 4.3 multiplier, and collecting cases).

The Court finds that Class Counsel's requested fees are reasonable and accordingly **GRANTS** Class Counsel's motion for attorneys' fees in the amount of $687,500.

### ii. Attorneys' Costs and Settlement Administrator Costs

Class Counsel seeks reimbursement of $16,306.92 in out-of-pocket costs. *See* Dkt. No. 112 at 14. Class Counsel is entitled to recover "those out-of-pocket expenses that would normally be charged to a fee paying client." *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (quotations omitted). Class Counsel is also seeking approval of payment to the settlement administrator in the amount of $14,000, higher than the standard $10,000 amount. Dkt. No. 113 at 11.

Class Counsel submitted a detailed table summarizing the costs and expenses incurred. Dkt. No. 112-1, Ex. B; *see also* Dkt. No. 112-2 ¶ 8.[5] These expenses include professional service fees (mediation services), travel fees, and research fees. *Id.* As to the settlement administrator costs, Class Counsel represents that CPT performed more work than anticipated, given the tax reporting required in more states than expected. Dkt. No. 112 at 11. Further, given that the Court preliminarily approved costs of up to $20,000, the higher Settlement Administrator costs are balanced out by the lower amount of costs actually incurred.

The Court is satisfied that these costs were reasonably incurred and **GRANTS** the motion for costs in the amount of $16,306.92 and settlement administrator costs in the amount of $14,000.

---

[5] Kevin R. Allen of Allen Attorney Group represents that he is not seeking reimbursement of his costs expended, an amount of $120. Dkt. No. 11-2 ¶ 8. This amount appears to be included in the calculation of Class Counsel's request for costs. Dkt. No. 112 at 14. For purposes of determining whether to award costs, the Court finds that the $120 amount is not material and will therefore include this amount in its total costs calculation.

13

### iii. Incentive Award

Class Counsel requests an incentive award of $5,000 for each of the Named Plaintiffs. "[N]amed plaintiffs . . . are eligible for reasonable incentive payments." *Staton*, 327 F.3d at 977; *Rodriguez*, 563 F.3d at 958 ("Incentive awards are fairly typical in class action cases."). They are designed to "compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez*, 563 F.3d at 958–59. Nevertheless, the Ninth Circuit has cautioned that "district courts must be vigilant in scrutinizing all incentive awards to determine whether they destroy the adequacy of the class representatives . . . ." *Radcliffe v. Experian Info. Solutions, Inc.*, 715 F.3d 1157, 1165 (9th Cir. 2013) (quotations omitted). This is particularly true where "the proposed service fees greatly exceed the payments to absent class members." *Id.* The district court must evaluate an incentive award using "relevant factors includ[ing] the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . [and] the amount of time and effort the plaintiff expended in pursuing the litigation . . . ." *Id.* at 977.

Courts in this district have recognized a $5,000 incentive award as "presumptively reasonable." *Smith v. Am. Greetings Corp.*, No. 14-CV-02577-JST, 2016 WL 362395, at *10 (N.D. Cal. Jan. 29, 2016); *Harris v. Vector Mktg. Corp.*, No. C-08-5198 EMC, 2012 WL 381202, at *7 (N.D. Cal. Feb. 6, 2012) (observing that "as a general matter, $5,000 is a reasonable amount"). The Court finds that a $5,000 service award here is reasonable to compensate each of the Named Plaintiffs given their contributions to this case. The Named Plaintiffs contributed a substantial amount of time to the case; participated in lengthy discussions with Class Counsel regarding their job descriptions, duties, compensation, and hours; and acted as a liaison for the other members about the status of the case. Dkt. No. 117, Ex. A ¶¶ 2–6; *id.*, Ex. B ¶¶ 2–6; *id.*, Ex. C ¶¶ 2–6. The incentive awards are also appropriate in this wage and hour class action, where Named Plaintiffs "undertook a significant 'reputational risk' in bringing this action against [his] former employer. *Covillo v. Specialtys Cafe*, No. C-11-00594 DMR, 2014 WL 954516, at *8 (N.D. Cal. Mar. 6, 2014) (citing *Rodriguez*, 563 F.3d at 958–59).

Based on the facts presented, including the Named Plaintiffs' substantial contributions to the class, Class Counsel's request for an incentive award is **GRANTED** in the amount of $5,000.

### III. CONCLUSION

For the foregoing reasons it is ordered that:

1. Plaintiffs' Motion for Final Approval of Class Action Settlement is **GRANTED**.

2. Plaintiffs' Motion for Class Counsel's Attorneys' Fees, Costs, and Incentive Award is **GRANTED**.

3. The Court approves the settlement amount of $2,750,000, including settlement administrator costs in the amount of $14,000; attorneys' fees in the amount of $687,500; costs in the amount of $16,306.92; and an incentive fee for each of the Named Plaintiffs in the amount of $5,000, for a total of $15,000.

The parties and settlement administrator are directed to implement this Final Order and the settlement agreement in accordance with the terms of the settlement agreement. The parties are further directed to file a stipulated final judgment within 21 days from the date of this order. All other deadlines and hearing dates in this case are vacated.

**IT IS SO ORDERED.**

Dated: 7/17/2019

HAYWOOD S. GILLIAM, JR.
United States District Judge

15